IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| UNITED STATES OF AMERICA | : | Criminal Action |
| --- | --- | --- |
|  | : | No. 2:23-CR-030-SCJ |
| v. | : |  |
|  | : |  |
| LYEDREKUS BAILEY | : |  |
|  | : |  |
| Defendant. | : |  |

SENTENCING MEMORANDUM ON BEHALF OF LYEDREKUS BAILEY

COMES NOW Defendant Lyedrekus Bailey, defendant in the above styled case, by and through counsel, and pursuant to Federal Rules of Criminal Procedure, Rule 32(i)(3), 18 U.S.C. § 3553(a) and § 3661 and provides this Court with relevant information to consider in determining a reasonable sentence to impose in this case.

I.  Introduction

This case is a snapshot of the current state of the war on drugs. Lyedrekus Bailey is a drug dealer and has been most of his life. Although he is no kingpin or even a mid-level trafficker, he faces a sentence more appropriate for that level of perpetrator. His record demonstrates that he is a street level dealer that has his own problems with addiction.

1

Mr. Bailey, through counsel, has objected to the assigned status as a career offender. This sentencing memorandum will address the objections made to the presentence report and then address the sentencing factors that this Court must consider in imposing a reasonable sentence.

What brings a street level dealer before this Court? There are several factors that brings Mr. Bailey before this Court. First, Mr. Bailey sold heroin laced with fentanyl. No one can deny the devastation that the opioid crisis has caused this country. Second, the Government believed that Mr. Bailey was situated to become a cooperating source of information on other criminal activity. Third, Mr. Bailey has a significant history of selling drugs. It would be easy to simply focus on Mr. Bailey as a drug dealer and not understand the context of who he is and why he is before this Court for sentencing. These factors will be addressed after the guideline objections portion of this memorandum.

## II. Guideline Objections

Mr. Bailey objects to his classification as a career offender because he does not have two prior qualifying controlled substance offenses as set forth in U.S.S.G. § 4B1.1. He does not deny those prior convictions occurred, but rather whether they qualify to enhance his sentence. Specifically, Mr. Bailey challenges whether his October 19, 2005 conviction for the sale of cocaine, his March 12, 2009

conviction for possession of cocaine with the intent to distribute, and his January 13, 2018 conviction for possession of methamphetamine with the intent to distribute qualify as a career offender predicates.[1]

Sale and Possession with Intent to Distribute Cocaine

The Eleventh Circuit has previously assumed that a Georgia sale of cocaine qualifies as a predicate offense to determine career offender status. *United States v. Little*, 772 Fed. Appx. 854, 855 (11th Cir. 2019) (unpublished). However, that assumption has not been challenged on appeal under the categorical approach.[2] The Georgia definition of "cocaine" is broader than the federal definition. *United States v. Jackson*, 36 F.4th 1294 (11th Cir. 2022)(finding Florida convictions for sale of cocaine and possession with the intent to sell cocaine did not qualify as a "serious drug offense' under ACCA)(opinion later vacated on other grounds). Mr. Bailey avers that *Jackson* was argued before the United States Supreme Court on

---

[1] Mr. Bailey avers that his March 16, 2016, Hall County conviction for possession of cocaine does not count as a controlled substance offense because it does not involve the "manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

[2] This issue is before the Eleventh Circuit in a couple of cases, but has not yet been decided.

3

November 27, 2023, and remains pending. That decision may provide additional insight into a proper guideline calculation.

In the meantime, the burden of proof for establishing that a career offender enhancement is warranted lies with the government. *United States v. Hernandez*, 145 F.3d 1433, 1440 (11th Cir. 1998). In determining whether prior convictions qualify as a predicate offense under the guidelines, the Court employs a categorical approach. *See Hollis v. United States*, 958 F.3d 1120, 1123 (11th Cir. 2020) (*citing Shular v. United States*, 589 U.S. ___, 140 S. Ct. 779, 783 (2020)). Under the categorical approach, a court must compare the state statute in effect at the time of the defendant's state conviction to the current federal definition of that drug. *See, e.g., United States v. Bautista*, 989 F.3d 698, 701 (9th Cir. 2021). The categorical approach requires this Court to consider "only the fact of the prior conviction and the elements of the offense, not the particular facts of the defendant's crime." *Hollis*, 958 F.3d at 1123; *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 2159, 109 L.Ed.2d 607 (1990). That approach looks only to the statutory definitions of the prior offenses, not the facts underlying each conviction. *United States v. Eason*, 919 F.3d 385, 388 (6th Cir. 2019). The Court looks to "the least of the acts" criminalized by the statute of conviction. *Moncrieffe v. Holder*, 569 U. S. 184, 133 S. Ct. 1678, 1684 185 L. Ed. 2d 727, (2013) (citations omitted). It asks if the underlying state conviction, "by definition, . . . falls within [the] category" of

4

offenses described by the federal statute. *Mellouli v. Lynch*, 575 U.S. 798, 805, 135 S. Ct. 1980, 192 L.Ed.2d 60, (2015) The inquiry is "hypothetical" and asks if "someone [could] commit [the] crime of conviction without" meeting the federal enhancement's criteria. *Pereida v. Wilkinson*, 141 S. Ct. 754, 762, 209 L. Ed. 2d 47 (2021).

A defendant need not produce a sample prosecution to show that the state statute is actually used to prosecute based on the broader reading "when the statutory language itself, rather than the application of legal imagination to that language, creates the realistic probability that a state would apply the statute to conduct beyond the generic definition." *Chamu v. United States AG*, 23 F. 4th 1325, 1330 (11th Cir. 2022). Thus, a litigant can use facially overbroad statutory text to meet the burden of showing the realistic probability that the state law covers more conduct than the federal. *Id.*

Under the Guidelines, a defendant is a career offender if (1) he was at least 18 years old when convicted of the instant offense, (2) the instant offense is "a felony that is either a crime of violence or a controlled substance offence," and (3) he has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

The guidelines define a "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year,

that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance or the possession of a controlled substance with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

To qualify as a "controlled substance" within the meaning of § 4B1.2(b), the substance at issue in the prior conviction must also qualify as a controlled substance under the federal definitions. *United States v. Stevens*, 654 Fed. Appx. 984, 987 (11th Cir. 2016) (unpublished); *United States v. Abdulaziz*, 998 F.3d 519, 523-528 (1st Cir. 2021); *United States v. Bautista*, 989 F.3d 698, 705 (9th Cir. 2021); *United States v. Townsend*, 897 F.3d 66, 71 (2d Cir. 2018); *United States v. Gomez-Alvarez*, 781 F.3d 787, 793–94 (5th Cir. 2015); *see also United States v. Tamayo*, 80 F.3d 1514, 1523 (11th Cir. 1996) (comparison must be made to federal definitions to decide if prior state conviction counts for criminal history points).

Mr. Bailey's convictions for the sale of and possession of cocaine with the intent to distribute do not count as career offender predicates because the definition of cocaine in Georgia at the time of those convictions was broader than the definition of cocaine federally. Before March 27, 2012, Georgia defined cocaine as:

> **Cocaine, coca leaves**, any salt, compound, **derivative**, stereoisomers of cocaine, or preparation of coca leaves, and any salt, compound, derivative, stereoisomers of cocaine, or preparation thereof which is chemically equivalent or identical with any of these substances, but not

including **decocainized coca leaves or extractions which do not contain cocaine or ecgonine**.

O.C.G.A. § 16-13-26(1)(D). The federal definition of cocaine is as follows:

coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed; cocaine, its salts, optical and geometric isomers, and salts of isomers; **ecgonine, its derivatives**, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph.

21 U.S.C. § 812, Schedule II(a)(4). The DEA's regulatory amendment defines cocaine as follows:

Coca leaves and any salt, compound, derivative or preparation of coca leaves (**including cocaine and ecgonine** and their salts, isomers, **derivatives** and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, **except that the substances shall not include: (i) Decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine; or (ii) Ioflupane**.

The federal definition specifically excludes Iofluplane whereas Georgia's definition does not. Under the categorical approach this is enough to disqualify Georgia's sale and possession of cocaine with the intent to distribute as counting as a career offender predicate. *United States v. Ruth*, 966 F.3d 642, 647 (7th Cir. 2020)(finding Illinois definition of cocaine to be broader than the federal definition and therefore did not count as a predicate offense); *United States v. Holliday*, 853

Fed. Appx. 53, 54 (9th Cir. April 16, 2021) (unpublished)(Finding that Montanna's definition of cocaine included Iofluplane while the federal definition specifically excluded it); *United States v. Scott*, 2021 WL 6805797, at *10 (D. N.J. Dec. 6, 2021)(finding New Jersey's definition of cocaine was broader than the federal definition and therefore did not count as a predicate).

The inclusion of Iofluplane is not the only way that the Georgia definition of cocaine is broader than the federal definition. Georgia law includes <u>all</u> stereoisomers (of which there are at least three varieties, including "optical," "geometric," <u>and</u> "conformational isomers"). The federal definition by comparison only prohibits two stereoisomers, "optical and geometric isomers." Because Georgia's definition included "conformational isomers" it is broader than the federal definition and cannot act as a serious drug predicate. Accordingly, Mr. Bailey's October 19, 2005, conviction for the sale of cocaine and his March 12, 2009 conviction for possession of cocaine with the intent to distribute do not count as a controlled substance offense.

<u>Methamphetamine</u>

Similarly to cocaine, Georgia's definition of methamphetamine is broader than the federal definition. The Georgia definition of methamphetamine is broader than the federal definition because it covers types of isomers (chemical variants)

8

that the federal definition does not, including real-world, commercially available substances. Georgia defines methamphetamine as, "Any substance which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers." O.C.G.A. § 16-13-26(3)(B). Georgia in turn defines isomers thus: "'Isomers' means stereoisomers (optical isomers), geometrical isomers, and structural isomers (chain and positional isomers) but shall not include functional isomers." O.C.G.A. § 16-13-21(14).

The federal statutes define methamphetamine somewhat differently. Methamphetamine is included on both Schedule II and Schedule III, as an injectable liquid, or a substance other than an injectable liquid, respectively. "Unless specifically excepted or unless listed in another schedule, any injectable liquid which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers." 21 U.S.C. § 812, Schedule II(c). "Any substance (except an injectable liquid) which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers." 21 U.S.C. § 812, Schedule III(a)(3).

Georgia's definition includes geometrical and structural isomers, in addition to the optical isomers included in the federal definition, therefore the Georgia statutes criminalize possession of substances not covered by the federal statutes. Because the Georgia and federal definitions of methamphetamine are not a

9

categorical match Mr. Bailey's January 13, 2018 for possession with the intent to distribute methamphetamine does not count as a career offender predicate controlled substance offense. Mr. Bailey should not be found to be a career offender.

**II. This Court should impose a sentence
which is no greater than necessary
to achieve the purposes of
18 U.S.C. §§ 3553.**

After determining the guideline range this Court has a statutory duty to consider factors independent of the Guidelines in arriving at a final sentence that follows the sentencing mandate of 18 U.S.C. § 3553(a). Given the circumstances present in this case, it is apparent that a guideline sentence would produce a sentence that is greater than necessary to meet the statutory considerations.

**(A)   The nature and circumstances of the offense and the history
and characteristics of the defendant.**

Lyedrekus Bailey had a hard time getting through his change of plea hearing because he believed that he was being treated as a kingpin when he is nothing more than a street level dealer. His hesitation was not because he denies that he sold heroin laced with fentanyl or in any way diminishes his accept of responsibility for his actions. He appreciates the serious nature of the crime he has admitted guilt to and recognizes that he cannot continue down this path. Suffering from his own

addictions and mental health issues, Mr. Bailey sold drugs to supply his habit and to support those around him in need.

Mr. Bailey knows the dangers of heroin and fentanyl, as evidence by his warning to the undercover agent to warn his customers that one particular batch of drugs was extremely strong. He understands the immense problem that the opioid crisis has had in the country. Mr. Bailey asks this Court to place him in context of those that created the larger opioid crisis.

Mr. Bailey also wants the Court to know that he was a drug dealer. He was approached by a government informant looking to buy heroin and fentanyl. The informant asked Mr. Bailey to help her out because she needed money to help with a family situation. Mr. Bailey knew where he could obtain heroin laced with fentanyl and helped the informant get that combination. That informant referred an undercover agent to Mr. Bailey and they proceeded to make five additional sales. This Court is aware of how drug investigations proceed. Could the agents have made a federal case against Mr. Bailey after the October 15, 2020 buy, absolutely. From the Government's point of view, Mr. Bailey would have still been a career offender looking at a long sentence.

That is not how the drug game is played. The Government did four more controlled buys after October 2020. As the Court knows the more drugs that Mr.

Bailey sells the higher his offense level climbs in federal court. Multiple sales also obliterate any real defense to these charges such as entrapment.  If the decision is made to keep the case at the state level, each separate buy is a separate charge causing Mr. Bailey to face a potential consecutive sentence of over a century.  Mr. Bailey has admitted selling all these drugs, but that does not make him anything other than a street level drug dealer.  If the Government were truly interested in stopping Mr. Bailey from selling drugs, they could have stopped him as early as October 15, 2020.  It is not legally entrapment as Mr. Bailey knowingly and willingly sold all those drugs, but when considering a reasonable sentence Mr. Bailey asks the Court to consider the inflation of the drug amount.

Why does the Government continue to let a person like Mr. Bailey sell drugs?  Certainly, it is to gather intelligence about his source of supply, but it is also about leverage.  Faced with a large drug quantity and the threat of an § 851 enhancement, Mr. Bailey took the advice of his previous counsel and attempted to mitigate his situation by cooperating with the authorities.  That attempt to cooperate was unsuccessful, and Mr. Bailey found himself in a difficult situation.  Mr. Bailey lost faith in his previous attorney and the Government, fearing that he was not going to be treated fairly by either.

It would be easy to look at Mr. Bailey's criminal record and label him a drug dealer.  That label would be only partly correct.  Mr. Bailey is also a high school

dropout and an addict. Mr. Bailey would like the Court to know that he is not a bad person. Attached to this memorandum are several character letters from friends and family in support of Mr. Bailey. In these letters, certain themes emerge. Mr. Bailey is a good father who loves his daughters and does what he can to help them. Nearly all the letters describe how much help Mr. Bailey is to friends and family, and to complete strangers. He provides food, shelter, and sound advice to others in need. One might assume that being a street level dealer, he would encourage others to follow in that path, but instead he has counseled his younger family members to stay in school and away from dealing drugs.

A central moment in Mr. Bailey's life came when his stepfather died. He was 12 years old and did not have a role model to help teach him wrong from right. That event undercut the entire family. (PSR ¶ 59). Financially desperate Mr. Bailey turned to selling drugs to help provide. Mr. Bailey did not finish high school and caught his first adult felony at age 17. After that Mr. Bailey's options were limited. Later Mr. Bailey would add drug addiction and undiagnosed mental health concerns.

There can be no doubt that the sale of heroin and fentanyl is an extremely serious crime that can have profound consequences to the community. However, there is more to the picture of this case and Mr. Bailey than the worst part of his conduct.

**(B) The four factors of 18 U.S.C. § 3553(a)(2) support a reasonable sentence for Lyedrekus Bailey.**

18 U.S.C. § 3553(a)(2) sets forth four factors that the Court shall consider in determining a reasonable sentence. Those factors include:

… the need for the sentence imposed--

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

Mr. Bailey recognizes that he will be punished for what he has be convicted of by his guilty plea. He understands the serious nature of the charges and he respects the need for this Court to promote respect for the law and provide a just punishment. Mr. Bailey submits that he is not a drug kingpin and should not be punished in that manner. He is a person that sold drugs to support his habit and the needs of his family.

He also recognizes the need to deter others from the same kind of conduct that he committed. Mr. Bailey submits that if he had gotten assistance in the past he would not be before this Court facing this sentence. Mr. Bailey asks this Court to

make several recommendations to the Bureau of Prisons. First, he would ask that the Court recommend that he be considered for the residential drug abuse program. If Mr. Bailey is going to have a chance at living a productive life, which he wants to do, he will need the tools to remain sober and avoid his addictive behaviors.

Second, Mr. Bailey asks that the Court recommend that the Bureau of Prisons consider him for mental health treatment. Similarly, to the request for drug treatment, Mr. Bailey believes that he suffers from undiagnosed mental health issues that help exacerbate his problems.

Third, Mr. Bailey asks that the Court recommend that he obtain a GED while incarcerated. Mr. Bailey has preached to his nephews the importance of school and he recognizes he needs to take that advice for himself. He plans on availing himself of other programs that are available to him.

These requests will have the dual effect of protecting the public from further crimes by Mr. Bailey while also provide him with the needed educational and medical treatment that he needs to become a productive member of society.

**(C) This Court should impose a sentence that will avoid unwarranted sentencing disparities among the defendants with similar records that have been found guilty of similar conduct pursuant to 18 U.S.C. § 3553(a)(6).**

As set forth in the final PSR, the average sentence imposed for someone of the same offense level and criminal history category was 192 months and the median

sentence was 180 months. Mr. Bailey asks that this Court impose a reasonable sentence that will avoid an unwarranted sentencing disparity.

Respectfully submitted this 8th day of January 2024.

/S/ *Adam M. Hames*
Adam M. Hames
Georgia Bar No. 320498

CERTIFICATE OF SERVICE

This is to certify that I have this day served correct copy of the foregoing Sentencing Memorandum with the Clerk of Court using the CM-ECF system which will automatically send e-mail notification of such pleading to opposing counsel.

Theodore S. Hertzberg, AUSA
Noah Schechtman, AUSA

This 8th day of January, 2024.

*/s/ Adam M. Hames*
Adam M. Hames
Georgia Bar No. 320498
The Hames Law Firm L.L.C.
511 East Paces Ferry Road N.E.
Atlanta, Georgia 30305
(404)842-9577(office)
Adam@amh-law.com
*Counsel for Lyedrekus Bailey*