UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


UNITED STATES OF AMERICA,      )
                               )
          PLAINTIFF,           )
                               )
    -VS-                       ) DOCKET NO. 2:23-cr-00030-SCJ-1
                               )
LYEDREKUS ONETAYE BAILEY,      )
                               )
          DEFENDANT.           )
_____


TRANSCRIPT OF SENTENCING PROCEEDINGS
BEFORE THE HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE
FRIDAY, JANUARY 12, 2024




APPEARANCES:

ON BEHALF OF THE GOVERNMENT:
        THEODORE S. HERTZBERG, ESQ.
        NOAH SCHECHTMAN, ESQ.
        ASSISTANT UNITED STATES ATTORNEYS


ON BEHALF OF THE DEFENDANT:
        ADAM MARSHALL HAMES, ESQ.




        VIOLA S. ZBOROWSKI, RDR, FAPR, CMR, CRR, RPR, CRC
OFFICIAL COURT REPORTER TO THE HONORABLE STEVE C. JONES
                UNITED STATES DISTRICT COURT
                    ATLANTA, GEORGIA
                    404-215-1479
            VIOLA_ZBOROWSKI@GAND.USCOURTS.GOV

(HELD IN OPEN COURT AT 11 A.M.)

THE COURT:  Ms. Wright, go ahead and call the case for today.

THE DEPUTY CLERK:  Yes, sir.  The Court calls the United States of America v. Lyedrekus Onetaye Bailey, 2:23-cr-30.

THE COURT:  Okay.  Representing the Government this morning?

MR. HERTZBERG:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. HERTZBERG:  Theodore Hertzberg and Noah Schechtman for the United States.  Seated with us are Special Agents Robert Cunningham and John Giunta of the Georgia Bureau of Investigation.

THE COURT:  Good morning to you-all.

Representing the defense?

MR. HAMES:  Good morning, Your Honor.  Adam Hames for Mr. Bailey.

THE COURT:  Good morning.  Mr. Hames and Mr. Bailey, good morning.

Mr. Bailey, have you reviewed the presentence report in this case with your attorney?

THE DEFENDANT:  Yes, sir.

THE COURT:  We will now go over the basic advisory offense level, which is a recommended 24.  The defendant was

at least 18 years old at the time of the instant offense. The offense is a controlled substance offense. The defendant has at least two prior -- two prior controlled substances offense convictions, and at least one prior felony conviction. He's considered a career offender. We'll discuss it further, Mr. Hames. Under USSC § 4B1.1(a), the maximum statutory penalty in this case is 40 years. As a result, the base offense level is, presumably, a 34.

There is a three-level reduction for acceptance of responsibility, giving us a total offense level of a 31 and a criminal history category of a VI and a custody guideline range of 188 months to 235 months. A fine guideline range of $30,000 to $5 million.

The court will adopt the facts in the presentence report, which no objection has been made, as the findings of this Court.

Now, it is my understanding that there are no guideline objections coming from the Government?

MR. HERTZBERG: None from the Government, Your Honor.

THE COURT: Mr. Hames, do you have an objection regarding career offender?

MR. HAMES: Correct.

THE COURT: I read your memo, but you can argue more, if you would like to, at this time.

MR. HAMES: Your Honor, I won't belabor it. I know

the Court has gone over the sentencing memorandum.

I do want to tell the Court there is a circuit split on this. The government cases that were given to the Court are the one side of the equation. There are four circuits that are on the other side of the equation in this matter.

The Eleventh, somewhat surprisingly, hasn't actually ruled on this.

THE COURT: Don't they have an unpublished opinion on it?

MR. HAMES: There is an unpublished opinion, yes, Your Honor. Exactly. But there's also -- I do want to bring to the Court's attention two cases that are currently pending before the --

THE COURT: United States Supreme Court?

MR. HAMES: Well, there's the United States Supreme Court, but there's two cases pending before the Eleventh Circuit that are more directly specifically on the cocaine issue, and that's *United States v. Kennedy* that has been pending since oral argument in November of 2022. And then *United States v. McCoy,* which was more recently argued, Your Honor. But both of those might have --

THE COURT: Were they argued before two different panels or the same panel?

MR. HAMES: It's my understanding that it was two different panels, Your Honor. And I think it is entirely

possible, Your Honor, that the Eleventh very well may be waiting to see what the Supreme does in Jackson. I think that's not an unreasonable inference from all of that.

THE COURT: I think that's the case.

MR. HAMES: So, Your Honor, you've read my sentencing memorandum. There is this morning -- and I apologize to the Court and to the Government, I received the declarations of Professor Garr (phonetic) last night at 11:30, and I got them to the Court as quickly as I possibly could.

THE COURT: No problem.

MR. HAMES: But otherwise, Your Honor, the law has been laid out there in my sentencing memorandum. And I -- the only point that I don't think I made in my sentencing memorandum is that when we think about these kind of things, I think the rule of lenity kind of breaks that tiebreaker and tends to go towards --

THE COURT: That's an unpublished opinion. I know it's not binding, but it's a persuasive authority?

MR. HAMES: That is what the law indicates, Your Honor. So I will make that -- I don't know what the Eleventh or the Supreme Court is going to do. For example, Taylor, had you told me, you know, three years ago that an attempted Hobbs Act armed robbery wouldn't qualify as a crime of violence, I would have laughed at you. But the Supreme Court thought otherwise. So I don't have -- I don't have that kind of

vision to give the Court this is what's likely to occur. But we're in a position where that's where we are, Your Honor.

THE COURT: Thank you, Mr. Hames.

Mr. Hertzberg.

MR. HERTZBERG: Thank you, Your Honor.

Your Honor, as the Court knows, but I'll state it for the record, the Government didn't file a response to the sentencing memorandum, but it did provide the Court with --

THE COURT: I've read all nine of them.

MR. HERTZBERG: Say it again, Your Honor?

THE COURT: I've read all nine of them.

MR. HERTZBERG: And I appreciate that, Your Honor. And so there's no tiebreaker here, as the Court would know. There is a split between the circuits, but the majority of the circuits are on the side of saying that 4B1.2 does not incorporate the Federal Controlled Substance Act definitions for controlled substances, which makes sense for a number of reasons, many of which were spelled out in the opinions by Your Honor's colleagues, Judge Greenberg and Judge Thrash and Judge Land in the Middle District, where those judges noted that if the Sentencing Commission wanted to incorporate the federal definition, it certainly could have.

Take, for example, 2K2.1 of the guidelines, the firearm guideline which I'm very familiar with. The guideline defines firearm by referring to the Gun Control Act of 1968.

There is a specific reference that firearm means firearm as defined by 921(a)(3). It's not firearm as defined by state law, it's not firearm as defined by the Court. There is a reference to the statute. There are references to 26 U.S.C. 5845. There are references all throughout the guidelines to various federal statutes. Here, 4B1.2 is referring to a controlled substance offense, talks about federal law or state law. It intentionally incorporates state law. There was a time when the guidelines didn't do that. That was early on, 1987, when the guidelines first came out. The guidelines were then amended to remove those specific references to federal law.

THE COURT: That's true.

MR. HERTZBERG: That all indicates quite strongly, I think, that what the Commission was looking to do was to incorporate in violations of state law that violated the controlled substance laws of a particular state.

One does not need to be an organic chemist to apply the United States sentencing guidelines.

The policy behind the career offender guideline is to take a defendant who is a recidivist, who is engaged in a particular sort of crime over and over and over again, and punish him more harshly.

And so a defendant like Mr. Bailey who has violated the controlled substance laws of the State of Georgia, that is

recognized by the sentencing guidelines even if that conduct theoretically -- and this really is a theoretical discussion -- would not have violated federal law.

I don't even know how to pronounce this particular isomer of cocaine.

THE COURT: That makes two of us.

MR. HERTZBERG: Yeah. As the Court may know, I started my career as a defense attorney in New York. I came down to South Georgia, to Savannah, and I was an AUSA there, and I had the pleasure of appearing before Judge Moore. And one of the more amusing things about appearing before Judge Moore was his inability to pronounce particular words. And so I had cases involving the "bandishing" of a firearm or the possession of "Alprazomam." None of these are real words. I could only imagine how he would pronounce this particular isomer. To me, it looks like "ifluaplane," (phonetic), but I'm sure that can't be it. Either way, that's not what Mr. Bailey was convicted of having trafficked in. It was cocaine.

And so for that reason, Your Honor, Mr. Bailey is a career offender. And the Controlled Substances Act definition is not what governs here. It may be what governs with respect to ACCA, because there is a reference to the Controlled Substances Act there. It may be what governs with other applications, for example, with a serious drug felony -- and a point on that.

One of the cases cited in the defendant's sentencing memorandum was *United States v. Ruth,* which was a Seventh Circuit case. Ruth is interesting because it dealt with two different provisions: One was the controlled substance offense definition in 4B1.2. The other was serious drug felony in 21 U.S.C. 841. And Mr. Hames addressed only the part that deals with the Controlled Substances Act definition. Only the part that deals with serious drug felony, where the Seventh Circuit said: Serious drug felony is defined as an offense involving a narcotic.

And so we look to what the federal definition of "narcotic" is in order to determine whether or not it applies. And because the Illinois statute was broader than the federal definition, it did not count as a serious drug felony. But read down a few more paragraphs where it deals with 4B1.2, and the Seventh Circuit says: The controlled substance offense definition in the guidelines is different because it specifically references state law, and, therefore, we don't need to find a categorical match between the state definition and the federal definition.

So Ruth, a case cited by the defense, is actually on the Government's side of the Circuit split.

THE COURT: Thank you.

MR. HERTZBERG: Thank you, Your Honor.

THE COURT: Mr. Hames, you get the last word.

MR. HAMES: Your Honor, one of the things that my colleague at the bar talked about was how career offender is set up to punish those who continually do so. That's what the guidelines are set up for anyway. That's why you get more criminal history points the more convictions you have, Your Honor. The importance of this is the difference between being dubbed a career offender. And I recognize that if you were to ask kind of the layperson, you know, does a possession with intent to sell cocaine, is that a controlled substances offense, I think the layperson is going to say yes every time. But the law is a little bit more nuanced than that.

THE COURT: True.

MR. HAMES: And so we ask the Court to consider the arguments we've made already in the sentencing memorandum, and I won't belabor this issue. But this is kind of a threshold issue in terms of, obviously, the -- because I think this is the only guideline objection --

THE COURT: Yeah, that's the only one.

MR. HAMES: But we just ask the Court to follow our recommendation in this sentencing memorandum, Your Honor.

THE COURT: Thank you, Mr. Hames.

The Court has read the cases, the nine cases the state gave, the memorandum given by Mr. Hames, which is a very good memorandum. However, in looking at all of the other cases, the one case -- unpublished case in front of the

Eleventh Circuit, basically what I'm reading, Mr. Hames, and what I have in front of me, I'm going to respectfully disagree with you on this. And, now, the Supreme Court may disagree with me next week on it. But from what I have here in front of me, I'm going to respectfully disagree with you and note your exception. But I'm going to find Mr. Bailey is a career criminal and leave the offense level of 31 and a criminal history category of a VI.

I will now read the sentencing options. Again, I note your exceptions to my rulings, Mr. Hames.

Count One, conspiracy to distribute at least 40 grams of fentanyl and at least 100 grams of heroin, under 21 U.S.C. § 841(a)(1), 841(b)(1)(B) and 846. This is a negotiated plea. The statutory penalty is five to 40 years and a $5 million fine. A mandatory minimum is five years. Again, the offense level is a 31. The criminal history category is a VI. A custody guideline range is 188 to 235 months. Fine guideline range is $30,000 to $5 million. Special assessment of $100. Forfeiture -- Mr. Hertzberg, is there any forfeiture involved in this case?

MR. HERTZBERG: No, Your Honor.

THE COURT: The cost of confinement annually is $37,448. The cost of supervision annually $4,472. Supervised release is four years to life, and Mr. Bailey is a United States citizen.

Mr. Hames, I will hear any argument. I've read your memorandum, but I'll hear any other argument you want to make, any witnesses you want to present, and if Mr. Bailey would like to allocute, I will hear from him as well, and then I will hear from Mr. Hertzberg, and then you get the last word, Mr. Hames.

MR. HAMES: Yes, Your Honor.

Your Honor, I was thinking about a case I had several years ago before in front of Judge Duffey, and a similar kind of guideline looking -- my client was a career offender, that kind of thing. And Judge Duffey pointed out when we came to sentencing that there wasn't anybody in the courtroom for my client that day. The records are not going to show it until I tell the record now that the courtroom is pretty full --

THE COURT: Yeah.

MR. HAMES: -- with people who are here taking out their time on a day when there are tornado warnings --

THE COURT: That says a lot.

MR. HAMES: -- to come down here to be here for Mr. Bailey.

Mr. Bailey is an admitted drug dealer. But part of that is also he didn't get the help that he needed when he could have gotten the help that he needed. He continued -- he's a drug addict. He didn't get any kind of vocational -- he got his first felony when he was 17 years old, you know,

and life kind of stacked up on him. And people were dependent upon him to kind of help bring money into the table.

Look, he has -- what he has ever done is -- is what, you know, he's here for today. But if we were to just say he's a drug dealer, that really doesn't give the Court the full picture of who this man is. He's a good person. He's a good father. Obviously, you know, people taking this much time out of their schedule to be here, you and I both have been in court where there is nobody who shows up.

THE COURT: Most of the time.

MR. HAMES: Right. That shows the amount of support that he has in the community. So when he does get out, Your Honor, he's going to try and go in the right direction.

The recommendations we asked in the sentencing memorandum include for the residential drug treatment program. And to the extent -- and, look, I recognize BOP is its own little world, but to the extent the Court can request that BOP do some mental health evaluation of my client -- I have not seen any instance that would cause me to be concerned about his ability to understand the proceedings.

THE COURT: Okay.

MR. HAMES: But there are certain -- and I am by no means qualified to make any kind of evaluations, psychologically, of anybody, but there are some issues that I have seen in my interactions with Mr. Bailey that if we could

address or somebody could address, his chances of success go up significantly.

THE COURT: I'll recommend it.

MR. HAMES: And then the last, Your Honor, I think is also an important part. We ask the Court to recommend that he get his GED when he's incarcerated. Now, Mr. Bailey has informed me that he intends on trying to take advantage of whatever classes are available to him to try to better himself. He doesn't want to go back to this lifestyle, and he certainly doesn't want to appear before Your Honor again or any of the other individual dressed in a black robe in the court of law.

THE COURT: How do you want me to word this GED part? I don't want to make that if he doesn't do it, he gets punished by it.

MR. HAMES: Right, right. I think if the Court just makes a recommendation that -- I don't know how to word this. Ms. Johnson, do you have any suggestion on how we might.

THE PROBATION OFFICER: General is fine. BOP typically does so anyway, especially if he's amenable to it.

THE COURT: If I just say recommended he gets assistance in obtaining his GED?

THE PROBATION OFFICER: Yes, sir.

MR. HAMES: And, Your Honor, that's the kind of thing that I think Mr. Bailey has gotten to the point where he wants

to fundamentally change his life.

THE COURT: That's good.

MR. HAMES: We are, obviously, bound by the plea agreement. And so the recommendation that I can make to Your Honor is the low end of the guideline range, and we would make that recommendation, Your Honor.

THE COURT: Thank you, Mr. Hames.

Mr. Bailey, Mr. Hames has represented you very well, spoke very well on your behalf, but you have the right to allocute or tell me anything you want to tell me at this time.

THE DEFENDANT: No, sir. I just want to say I'm sorry.

THE COURT: All right. Thank you.

Mr. Hertzberg.

MR. HERTZBERG: Thank you, Your Honor.

THE COURT: Thank you.

MR. HERTZBERG: Your Honor, let me start with a correction, which is that the plea agreement in this case didn't require the defendant to recommend the low end of the guideline range. It required the defendant to recommend a sentence of 188 months specifically, which happens to be the low end of the career offender range, which is why -- one of two reasons why I was so put off by the defendant's sentencing memorandum. Because it argues that the defendant should not be a career offender, yet he's required to recommend a

sentence that falls within the career offender range of 188 months. And then in the revised sentencing memorandum that was filed yesterday, the defendant acknowledges that the plea agreement requires him to request or recommend a sentence of 188 months, but reminds the Court that it has the option of ignoring the parties' recommendations and asks for a reasonable sentence.

That sort of lip service to the plea agreement is something that the Eleventh Circuit has found in other cases, such as the *Taylor* case, 77 F.3d 368 and the Hutchinson case to constitute a breach of the plea agreement. And so now when Mr. Hames is saying we're recommending the low end as required, I want the Court to understand that even if it had found that the guidelines were otherwise, that it should only consider the base offense level to be 24, and that Mr. Bailey's criminal history category would have been V, the defense's recommendation still would have been 188 months.

THE COURT: That was the understanding between the Government and the defendant, 188 months?

MR. HERTZBERG: That was stated specifically in the plea agreement, that the defendant would recommend 188 months, and the Government would recommend 235 months.

THE COURT: Hold on one second, Mr. Hertzberg. Page 5, Ms. Johnson?

THE PROBATION OFFICER: Yes, sir, in the presentence

report.

THE COURT: Okay.

MR. HERTZBERG: And as to the plea agreement, I'm specifically referring to paragraph 18 as setting forth the defendant's recommendation where it states that the defendant agrees to recommend that he be sentenced to 188 months of imprisonment.

Now, I'm not asking for any remedy for this breach. Instead, I'm going to abide by the Government's promise to recommend 235 months, recognizing that, given the defendant's breach, I could do more. But I also recognize -- and I want the Court to recognize and I want the defendant and the defendant's family to recognize, that the defendant could have faced much more significant penalties. And it's because of the Government's decision not to do that, that he doesn't face those penalties today. Specifically, the Government could have filed an 851 information.

The defendant's criminal history category is abysmal. To say that life stacked up on him, I think really minimizes the extent of that criminal history. A criminal history that begins nearly 20 years ago with a conviction for sale of cocaine and providing false information, that continues with obstruction of officers in multiple cases, with possession of cocaine with intent to distribute, with numerous probation revocations and modifications, with simple possession cases

which are pled down from possession with intent to distribute where he gets a break and doesn't have to get yet another PWIT. But nonetheless, the same year that he takes that conviction, a month later there is conviction for possession with intent.

And so life didn't stack up on Mr. Bailey. Mr. Bailey committed himself to a life of crime as a drug dealer.

And so Mr. Hames, in his sentencing memorandum on Monday, said that Mr. Bailey was a street-level dealer. On Thursday he amended that to say he was an active street-level dealer. Absolutely, he was. He was a very active dealer. He was a prolific dealer. And I would submit, Your Honor, that Mr. Bailey actually was a regional source of supply of controlled substances.

Mr. Bailey was fortunate if he had life stack up on him, because the folks to whom he was dealing this poison, I don't know if the same could be said for all of them. These drugs ruin and end lives.

THE COURT: That's true.

MR. HERTZBERG: This is a very serious offense. And because it's so serious, Congress has provided that individuals who have a history like Mr. Bailey's are to face enhanced penalties. The Government could have filed an 851 information in this case, which would have required this Court

to impose a sentence of no less than ten years and up to life in prison. Had it done so and had the career offender guideline applied as it -- as it does, and as it correctly should, Mr. Bailey's base offense level would have been 37, not 34. His criminal history still would have been in category VI. He would face an even higher guideline range that he faces today with a higher stat max. So that if I were to breach the plea agreement, as the defendant has, and say, Well, Your Honor, you have all these other options, you don't have to listen to my recommendation, you could sentence the defendant to life in prison, that would have been what Mr. Bailey was facing. But it isn't. It isn't because the Government did not file an 851 information. It has exercised restraint in this case. It is recommending a sentence that is not higher than the guideline range, and it has specifically provided in the plea agreement that if this Court were to exercise its discretion and were to ignore the Government's recommendation and its -- and its restraint and to impose a sentence greater than what the Government is recommending, Mr. Bailey would be able to appeal.

And so I want the Court to appreciate that contrast between the positions of the defense and the positions of the Government.

And I also want the Court to have an understanding of Mr. Bailey's conduct in this case, recognizing that it is only

one piece of Mr. Bailey's total conduct.

The original sentencing memorandum filed on Monday suggested that Mr. Bailey was dealing in fentanyl-laced heroin because a government informant essentially put him up to it, that Mr. Bailey was a specialist before the Government's informant got involved. He was dealing in cocaine. He was dealing with methamphetamine, but not in fentanyl-laced heroin, as if drug dealers are cardiologists and urologists and they have specialities and you only go to one particular person for one particular drug.

Mr. Bailey's history demonstrates that that's not the case. In fact, as noted in the PSR, specifically in paragraph 52, the defendant has an open case in North Carolina involving fentanyl-laced heroin. And this is after the end of the conspiracy that is charged in this case. It's after the defendant had gotten arrested with a load of drugs in March of 2021. And the way that that case in North Carolina arose, as reflected in the unopposed paragraph that I'm referring to, paragraph 52, an individual who was in custody in North Carolina says to an associate of his, to a female, get in touch with my source of supply, Lyedrekus Bailey, and get some drugs so that you can sell it to raise money to get me out.

So she drives from North Carolina all the way down to Gainesville to get the drugs from Mr. Bailey, because Mr. Bailey is known in North Carolina as an existing source of

supply for these drugs. This is a year and a half after the GBI stopped his controlled buys from Mr. Bailey. It's a year and a half after the interdiction that occurred in March of 2021 at the end of the charged conspiracy.

But with respect to the charged conduct, I have three exhibits that I would like to hand up to the Court and I would like to play. And I do so having conferred with Mr. Hames in advance, and understand that there is no objection to their admission.

THE COURT: No objection, Mr. Hames?

MR. HAMES: Your Honor, I don't see the relevance of this. I think counsel's point has been made. You know -- I will withdraw the objection. But if I see something that I think is objectionable, I -- you know, my client has entered a guilty plea. He doesn't write the sentencing memorandum.

THE COURT: Well, with that understanding, I'll allow it in since there is no objections. Of course, if there are objections in between, you can object.

MR. HERTZBERG: Thank you, Your Honor.

What I'm going to hand up are three disks, Government's Exhibits 1, 2, and 3, and I'll introduce each one of the exhibits as I play them.

THE COURT: All right.

MR. HERTZBERG: What I'm loading now, Your Honor, is Government's Exhibit 1, which is a three-minute clip showing

the first of the controlled purchases made by the GBI undercover agent from Mr. Bailey in Gainesville of fentanyl-laced heroin.

There is a transcript on the bottom, because the sound may be difficult. This is a transcript that I also provided to Mr. Hames in advance before I was told that there would be no objection to its admission today.

(A video was played for the Court.)

MR. HERTZBERG: And so, Your Honor, although the defendant tries to suggest that he's warning the agent, because he recognizes the dangers of the opioid epidemic in this country and he wants to make sure that everybody is safe, that he's warning the agent about the strength of these drugs that he is selling over and over and over again.

What's clear from this is it's a marketing tactic. He says, "It's worth it, you'll see. This shit is real good." That's what he's making the point of. These are good drugs. And he understands as well here, because the suggestion has been made that he's merely a street-level dealer, that he's selling to people who are going to sell it further. The agent made that very clear, also. He was asked by Mr. Bailey, "Do you use this or do you sell it?" He was told, "I sell it. I'm going to become pretty regular. I'm going to keep coming up here from LaGrange." Not only is he dealing with the Carolinas and North Georgia, but now he's going to reach out

to LaGrange as well, and through this agent be able to distribute there.

And so I think it's important to put these matters in context for the Court to understand what the interaction actually was with Mr. Bailey.

Government Exhibit 2 is a recording of a phone call between Mr. Bailey and the undercover agent that was following up to see how the undercover agent's, quote, unquote, customers liked the product, and to talk about when he would be back to get more.

(An audio file was played for the Court.)

MR. HERTZBERG: When are you going to need a little more, he asks, recognizing that these drugs, which are killing people and ruining people's lives, are a moneymaker.

The last call I'm going to play is from later in the conspiracy, in February. But between these two calls, there was another transaction where Mr. Bailey was not present but that he facilitated. That was at a house in Gainesville. Mr. Bailey was off doing something else, and he wasn't able to hand the drugs over himself, so he told the undercover agent to go to a particular house.

When the agent did, and I think this is described in detail in the PSR, he was turned away. And so there was a conversation between Mr. Bailey and the agent about what the hell happened here. And Mr. Bailey was upset because he said,

quote, I run that shit. Nobody else is paying the bills down there but me. Indicating, again, that Mr. Bailey was not at the lowest level of the totem pole, but that there were other people in this conspiracy to which he has plead guilty who he managed. And so I think that's also important for the Court to consider in contemplating what a reasonable sentence is for Mr. Bailey.

And I don't want this to get lost, because Mr. Hames has, essentially, accused me of piling on here with this additional evidence, which I think gives proper context to Mr. Bailey's actual conduct, which is the first of the 3553(a)(1) factors.

I recognize that 235 months is a lot of time. And the Court's obligation, under 3553(a), is to impose a sentence that is sufficient but not greater than necessary to meet the purposes of sentencing. 235 months does that.

I don't think it's necessary for the Court to impose 236 or 240 or the statutory maximum of 480. 235 will do it. And so I'm not asking for anything more than that. But I'm also not asking for less. And I'm not asking for less because of how aggravating the defendant's conduct is.

I'll now start with Government's Exhibit No. 3.

(An audio file was played for the Court.)

MR. HERTZBERG: And so Mr. Hames has told us about the many sides of Lyedrekus Bailey. Lyedrekus Bailey the

father, Lyedrekus Bailey the drug dealer, Lyedrekus Bailey the man who feeds the homeless in his spare time. This shows us Lyedrekus Bailey the salesman. Lyedrekus Bailey reaching out to the agent saying, Where have you been? When are you coming back to get more? And talking about the product. It's not going to kill anybody. We don't want anybody to get sick. It's not going to take them out, they're going to love it -- promoting this while recognizing the dangers of what he's doing.

I recognize that Mr. Bailey has a good amount of support here today. I've read the letters that were submitted on his behalf. And so I know that he's been involved in a lot of people's lives, and that's an admirable thing. But the drugs that he sold that did not go to the GBI did not go to people who would come here and speak on Mr. Bailey's behalf about what a great person he is. This poison -- again, I cannot stress enough, Judge -- is a scourge on our society. It ruins the lives of the people who use these drugs and the people who love those people. It ruins entire families. It ruins communities. It is -- it is something that we are still trying to dig out of, and Mr. Bailey, whatever he might have been doing or not doing with respect to feeding the homeless, was promulgating that epidemic. He wasn't looking to solve any societal problem.

And I think it's telling, frankly, that the majority

of the people who have submitted letters on his behalf have criminal histories, some of which are similar to Mr. Bailey's, some of which are worse. He's got a letter from an individual whose been convicted of possession with intent to distribute, of tampering with evidence, of battery. He's got another letter from a different person who has been convicted of armed robbery. And so there may well be a law-abiding segment of the community that supports Mr. Bailey, but that represents a minority of the people who have submitted letters on his behalf.

And so with all of that, Your Honor, I don't see any justification for a variance from the guideline range. I don't see any reason for the Court not to accept the Government's reasonable recommendation of 235 months for a prolific and dangerous and recidivist drug dealer such as Lyedrekus Bailey.

THE COURT: Thank you, sir.

MR. HERTZBERG: Thank you, Your Honor.

THE COURT: Mr. Hames, you have the last word.

MR. HAMES: Your Honor, first, to Mr. Hertzberg, if you think I've in some way wronged you, I apologize. That was never my intent.

Your Honor, my client doesn't write the sentencing memos. He didn't -- he dropped out of high school. The career offender objection is something I felt an obligation to

preserve, because I don't know where the law is going to be.

THE COURT: I have no problem with you arguing career offender.

MR. HAMES: I understand, Your Honor. I understand.

And just so the record is clear, this case before the Court is an information. Yes, the Government did file an information in this case. But the previous case, they did file an 851 enhancement in that case. So that's why we're here. We are appreciative of the Government for not filing an 851 in this matter, because it does open up the matter a good bit more.

The Government and I just simply view the first exhibit differently. He's a drug dealer, of course he's going to try to sell his product. That's what drug dealers do. But nobody -- one of the things that -- I have been around long enough. When I first started practicing, Your Honor, crack cocaine was the big thing, and crack was going to kill you and that kind of stuff. Right? And then meth came along. Meth is going to kill you. Right?

Fentanyl is a prescription drug that's used every day in the medical profession. Does that mean that it's not -- in the way that it was used with Mr. Bailey, in any way appropriate? No. Clearly not. But what I also noticed in that is that he told the undercover repeatedly, This stuff is strong as hell. That's from an addict who knows. And, yes,

can that be read as marketing? Yes. But is it -- also can read as -- you know, look, think about it from this perspective. Drug dealers don't make money if their clients die. Right? So if they've got somebody who is -- is coming back for more, you want to keep them coming back for more. But you don't do that if you give somebody strong stuff and you know it's strong stuff. It's a warning, Your Honor.

And, Your Honor, I will say that I did make the objection that the Government was inflating -- not objection, but argument that the Government was inflating the drug amount in this matter. Truth of the matter is, he's a drug dealer. All right? You know, and I think the guidelines take into consideration the fact that, yeah, they may have caught him one day, but there are other days out there that he was probably doing this very thing. I'm not going to sit here and deny that. The evidence shows the exact opposite of that. But, again, to simply say that he's a drug dealer, marketing, doesn't give the Court the entire picture of it.

I have an obligation to my client to do the best job that I can for him.

THE COURT: By law, and ethical.

MR. HAMES: Yes. And so the arguments that seem to have offended my fellow colleague at the bar, you know, it is what it is.

THE COURT: Mr. Hertzberg is a tough guy. He's good.

He's all right. Don't worry about Mr. Hertzberg.

MR. HAMES: I'm not worried about him. But what I would say to Your Honor is that the evidence is what the evidence is. He entered a plea.

This is one of the problems of how the drug -- war on drugs is. He's been in and out of state court. He gets to federal court, it's a different ball game --

THE COURT: You've got that right.

MR. HAMES: -- you know. So that's one of those things that is hard, and, you know, Mr. Bailey is not the first one of my clients that has had that rude awakening. So we ask the Court to impose the 188, which is -- it happens to be the low end of this guideline range, as consistent with the plea agreement.

THE COURT: Thank you, Mr. Hames.

We start off with the offense level of a 31, and a criminal history category of a VI, and a custody guideline range of 188 to 235 months. In all my cases, the first thing I consider is 3553(a) factors.

Mr. Bailey, in this case, this is a very serious case. I've been a judge since 1993, and I've seen the effect that drugs have on people's lives. It not only kills people, change their whole own lives, but it destroys families. Mr. Hertzberg right, it destroys whole neighborhoods. It just tears a hole in the fabric of society, and you selling drugs

are part of that. I don't say this to offend you, as your attorney acknowledges it, it is a fact. It is a very serious offense here.

I made a ruling that I know you and Mr. Hames did not agree on, but I made a ruling that you are a career offender. And looking at the nature and circumstances of the situation here, what is going on and looking at the plea sentence report, what you were doing, you have a very bad criminal history category; you know, it's the highest it can get: VI. I don't -- you know, obviously, you've got good characteristics about you, because you have a lot of people here today supporting you. And Mr. Hames is right, we're looking at tornadoes today and everything. They braved the chance and came out in tornadoes and bad weather in order to support you, and I take that into consideration. I also take into consideration where you have strong family and friends' support.

The drugs you're selling or were selling has denied some families the opportunity that your family has. Some people see drugs differently. Drugs, again, my feeling is it destroys society. It's hurting not only people, but it's hurting whole neighborhoods, communities. And, again, I don't say this to offend you, but I have to take that into consideration when I get ready to sentence you. I've outlined the things I looked at, all of the 3553(a) factors. Your

attorney, Mr. Hames, has done a great job. He's made me think about things, look at things I haven't considered in the memorandum.

Again, Mr. Hames, Mr. Hertzberg is a big guy. I've been dealing with him for a while. He can handle it.

Mr. Hertzberg, I agree with you, this is a very, very serious offense.

If you stand up, Mr. Bailey, I'm going to sentence you.

Mr. Bailey, I'm going to sentence you to 235 months' confinement, $100 special assessment, seven years' supervised release. There will not be a fine. I will recommend a residential drug treatment program. I will recommend a mental health evaluation. I will recommend that they assist you in obtaining your GED.

Mr. Bailey, you have a chance to -- 235 months, whether or not, you know, it depends on what happens in the Supreme Court, or whatever. It's not a light sentence. I'm not going to kid you. But you still have an opportunity to change your life, change -- Mr. Hames said you want to change your life. You're going to have the opportunity to do that, but nobody can change your life but you.

With that stated, I now am going to read the conditions of supervised release. The mandatory conditions are that you must not commit another federal, state, or local

crime. You must not unlawfully possess a controlled substance. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of being released from imprisonment, and at least two periodic drug tests thereafter determined by the probation office and the Court.

You must cooperate in the collection of DNA as directed by the probation officer.

Special conditions of supervised release are: You must submit your person, property, house, resident, vehicle, papers, computers, other electronic communications or data storage device or media or office to a search by the United States Probation Officer without a warrant. You shall permit the disposal of any material considered -- confiscation and disposal of any material considered contraband by the Probation Officer.

You must not use or possess any controlled substance without a valid prescription. You must participate in alcohol or other substance abuse treatment programs as required and set up by the Probation Officer.

You must submit to substance abuse testing to determine if you have any kind of prohibited substance. You must not use or possess any controlled substance without a valid prescription.

You must participate in a mental health treatment

program and follow the rules and regulations of that program. You must take all mental health medications as prescribed by your treating provider.

THE DEFENDANT: No. No, sir.

THE COURT: All right. This is a negotiated plea, however, if the Government has any exceptions to the sentence being entered today, the Court will hear from you now.

MR. HERTZBERG: No exceptions, Your Honor. I would ask, though, if the Court would state, since this was a guideline objection, whether it would still have imposed the 235 months if the guidelines were otherwise; which is to say, if the Court had sustained the defense's objection, would the Court still have imposed 235 because it finds that that is a reasonable sentence under 3553(a)?

THE COURT: Yes. Mr. Hames, I don't say yes without taking into consideration the 188 months you asked me for. Again, I think you know me. I listened to everything you said. I read your first sentencing memorandum, I read your second one. But as I said, Mr. Bailey and Mr. Hames, and I'm talking to you because I don't want you to think I'm disregarding you, this is a very serious offense, and I know you know that. But the people affected, yeah -- it would have been a sentence of 235 months --

MR. HERTZBERG:  Thank you.

THE COURT:  -- regardless of the guideline.

THE PROBATION OFFICER:  Your Honor, I missed how many years of supervised release.

THE COURT:  Seven.  Mr. Hames, I already note your exception to me finding that Mr. Bailey is a career offender, but are there any other exceptions you would like to make for the record?

MR. HAMES:  Not other than the career offender, Your Honor.

THE COURT:  At this time, Mr. Bailey, I need to explain your appeal rights to you.

You can appeal your conviction if your believe your guilty plea was unlawful or involutionary or if there is some other fundamental defect in the proceeding that was not waived by your guilty plea.

You also have the statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law.  However, the defendant may waive those rights per a plea agreement, and you've entered into a plea agreement which waives some or all of your rights to appeal the sentence itself.  Such waivers are generally enforceable, but if you believe the waiver was unenforceable, you can present that theory to an Appellate Court.

With few exceptions, any notice of appeal must be filed within 14 days of judgment being entered in your case.

If you're unable to pay the cost of appeal, you may apply for leave of appeal in forma pauperis.

If you so request, the Clerk of Court will prepare and file a notice of appeal on your behalf.

Any question about your right to appeal, Mr. Bailey?

MR. HAMES:  Your Honor, I will specifically go over those rights with him.

I will note that the plea agreement does contain a standard waiver of appellate rights.  So all of that I will go over with my client beforehand.

THE COURT:  Mr. Hames, I think you did an excellent job.  It is a very complex, difficult case.  Mr. Hertzberg and Mr. Schechtman also did an excellent job on a very complex case.

Now, here's how I want to do this.  I want the Marshal to take Mr. Bailey out.  I want the lawyers to remain where they're at, and then I went everybody in the courtroom to file out.

You-all can sit down for a second.  All of the lawyers can sit down for a second.

Now, I realize some of those people sitting in the audience, Mr. Hames, were family.  I don't think everybody sitting in that audience was family.

MR. HAMES: No.

THE COURT: And Mr. Hertzberg made a powerful closing argument. Those two GBI agents, go with Mr. Schechtman and Mr. Hertzberg back to their offices. I want the CSOs to make sure that Mr. Hames gets to his car safely. Walk him all the way to his car until he gets in there. Two agents, you-all make sure those two AUSAs get back to their office upstairs safely. There are people hanging out there in the hall. I want one of the CSOs to go out in the hall and say, Clear the hall. Will you-all do that for me?

MR. HERTZBERG: Thank you, Your Honor.

THE COURT: You're doing your job. Both of you-all are doing your job. Some people don't quite understand it. Whereas, I think, Mr. Hames, the majority of those people sitting out there were family. Everybody was not family.

MR. HAMES: That's very true, Your Honor.

THE COURT: So the CSOs, make sure Mr. Hames gets to his car. Walk him all the way to his car and go from there. Let's stay here a second.

MR. HAMES: Your Honor, while I appreciate that, I'm not concerned.

THE COURT: I am.

MR. HAMES: I appreciate that.

THE COURT: I'm going to tell you what my wife told the Marshals one day. She said, I send him to you-all in this

shape, and I want to get him back in the same shape I sent him.

MR. HAMES: Well, my wife will certainly appreciate that.

THE COURT: I'm going to send you back to your wife in the same shape she sent you today. You guys know how to handle it. All right? They're lawyers. You guys know how to handle it. I used to be a Superior Court judge. The GBI guys know what to do. I'm concerned about you-all, but you-all know how to handle things. As soon as the CSOs tell me it's clear, you-all can go.

Thank you-all. Have a good day.

(The hearing concluded at 12 o'clock.)

C E R T I F I C A T E

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

I do hereby certify that the foregoing pages are a true and correct transcript of the proceedings taken down by me in the case aforesaid.

This the 12th day of September, 2024.

/s/Viola S. Zborowski _____
VIOLA S. ZBOROWSKI,
RDR, FAPR, CMR, CRR, RPR, CRC
OFFICIAL COURT REPORTER TO
THE HONORABLE STEVE C. JONES

## $

**$100** [2] - 11:19, 31:11
**$30,000** [2] - 3:13, 11:18
**$37,448** [1] - 11:23
**$4,472** [1] - 11:23

## /

**/S/VIOLA** [1] - 38:14

## 1

**1** [2] - 21:21, 21:25
**100** [1] - 11:12
**11** [1] - 2:1
**11:30** [1] - 5:8
**12** [1] - 37:13
**12TH** [1] - 38:9
**14** [1] - 35:2
**15** [1] - 32:4
**17** [1] - 12:25
**18** [2] - 3:1, 17:4
**188** [12] - 3:12, 11:17, 15:21, 16:1, 16:5, 16:17, 16:19, 16:21, 17:6, 29:12, 29:18, 33:18
**1968** [1] - 6:25
**1987** [1] - 7:10
**1993** [1] - 29:21

## 2

**2** [2] - 21:21, 23:6
**20** [1] - 17:21
**2021** [2] - 20:17, 21:4
**2022** [1] - 4:19
**2024** [1] - 38:9
**21** [2] - 9:6, 11:13
**235** [14] - 3:12, 11:17, 16:22, 17:10, 24:13, 24:16, 24:18, 26:14, 29:18, 31:10, 31:16, 33:13, 33:15, 33:25
**236** [1] - 24:18
**24** [2] - 2:25, 16:15
**240** [1] - 24:18
**26** [1] - 7:5
**2:23-CR-30** [1] - 2:6
**2K2.1** [1] - 6:23

## 3

**3** [2] - 21:21, 24:22
**31** [4] - 3:10, 11:7, 11:16, 29:16
**34** [2] - 3:8, 19:5
**3553(A** [4] - 24:14, 29:19, 30:25, 33:16
**3553(A)(1** [1] - 24:12
**368** [1] - 16:10

## 4

**37** [1] - 19:4

## 4

**40** [3] - 3:7, 11:11, 11:14
**480** [1] - 24:18
**4B1.1(A** [1] - 3:6
**4B1.2** [4] - 6:15, 7:6, 9:5, 9:15

## 5

**5** [4] - 3:13, 11:15, 11:18, 16:24
**52** [2] - 20:13, 20:19
**5845** [1] - 7:5

## 7

**77** [1] - 16:10

## 8

**841** [1] - 9:6
**841(A)(1** [1] - 11:13
**841(B)(1)(B** [1] - 11:13
**846** [1] - 11:13
**851** [5] - 17:17, 18:24, 19:13, 27:8, 27:10

## 9

**921(A)(3)** [1] - 7:2

## A

**A.M** [1] - 2:1
**ABIDE** [1] - 17:9
**ABIDING** [1] - 26:7
**ABILITY** [1] - 13:20
**ABLE** [3] - 19:20, 23:1, 23:19
**ABSOLUTELY** [1] - 18:12
**ABUSE** [2] - 32:19, 32:21
**ABYSMAL** [1] - 17:18
**ACCA** [1] - 8:22
**ACCEPT** [1] - 26:13
**ACCEPTANCE** [1] - 3:9
**ACCUSED** [1] - 24:9
**ACKNOWLEDGES** [2] - 16:3, 30:2
**ACT** [6] - 5:23, 6:16, 6:25, 8:20, 8:23, 9:7
**ACTIVE** [2] - 18:11, 18:12
**ACTUAL** [1] - 24:11
**ADAM** [1] - 2:17
**ADDICT** [2] - 12:24, 27:25
**ADDITIONAL** [1] - 24:10
**ADDRESS** [2] - 14:1
**ADDRESSED** [1] - 9:6
**ADMIRABLE** [1] - 25:13
**ADMISSION** [2] - 21:9, 22:7

**ADMITTED** [1] - 12:21
**ADOPT** [1] - 3:14
**ADVANCE** [2] - 21:8, 22:6
**ADVANTAGE** [1] - 14:7
**ADVISORY** [1] - 2:24
**AFFECTED** [1] - 33:24
**AFORESAID** [1] - 38:8
**AGENT** [10] - 22:2, 22:10, 22:13, 22:20, 23:1, 23:7, 23:20, 23:22, 23:24, 25:4
**AGENT'S** [1] - 23:8
**AGENTS** [1] - 2:13
**AGENTS** [2] - 36:3, 36:6
**AGGRAVATING** [1] - 24:21
**AGO** [3] - 5:22, 12:9, 17:21
**AGREE** [2] - 30:5, 31:6
**AGREEMENT** [13] - 15:4, 15:18, 16:4, 16:8, 16:11, 16:21, 17:3, 19:8, 19:16, 29:14, 34:20, 34:21, 35:10
**AGREES** [1] - 17:6
**AHEAD** [1] - 2:2
**ALCOHOL** [1] - 32:18
**ALLOCUTE** [2] - 12:4, 15:10
**ALLOW** [1] - 21:16
**ALPRAZOMAM** [1] - 8:14
**AMENABLE** [1] - 14:20
**AMENDED** [2] - 7:11, 18:11
**AMERICA** [1] - 2:5
**AMOUNT** [3] - 13:11, 25:10, 28:10
**AMUSING** [1] - 8:11
**ANNUALLY** [2] - 11:22, 11:23
**ANYWAY** [2] - 10:4, 14:20
**APOLOGIZE** [2] - 5:6, 26:21
**APPEAL** [10] - 19:20, 34:12, 34:13, 34:17, 34:22, 35:1, 35:3, 35:4, 35:6, 35:7
**APPEAR** [1] - 14:10
**APPEARING** [2] - 8:10, 8:11
**APPELLATE** [1] - 34:24
**APPELLATE** [1] - 35:11
**APPLICATIONS** [1] - 8:24
**APPLIED** [1] - 19:3
**APPLIES** [1] - 9:12
**APPLY** [2] - 7:18, 35:4
**APPRECIATE** [5] - 6:12, 19:21, 36:20, 36:23, 37:3
**APPRECIATIVE** [1] - 27:9
**APPROPRIATE** [1] - 27:23
**ARGUE** [1] - 3:23
**ARGUED** [2] - 4:20, 4:22
**ARGUES** [1] - 15:24
**ARGUING** [1] - 27:2
**ARGUMENT** [5] - 4:19, 12:1, 12:2, 28:10, 36:3

**ARGUMENTS** [2] - 10:14, 28:22
**ARMED** [2] - 5:23, 26:6
**AROSE** [1] - 20:17
**ARRESTED** [1] - 20:16
**ASSESSMENT** [2] - 11:19, 31:11
**ASSIST** [1] - 31:14
**ASSISTANCE** [1] - 14:22
**ASSOCIATE** [1] - 20:20
**AT** [1] - 2:1
**ATTEMPTED** [1] - 5:22
**ATTENTION** [1] - 4:12
**ATTORNEY** [4] - 2:22, 8:8, 30:2, 31:1
**AUDIENCE** [2] - 35:24, 35:25
**AUDIO** [2] - 23:11, 24:23
**AUSA** [1] - 8:9
**AUSAS** [1] - 36:7
**AUTHORITY** [1] - 5:18
**AVAILABLE** [1] - 14:8
**AWAKENING** [1] - 29:11

# B

**BAD** [2] - 30:8, 30:14
**BAILEY** [61] - 2:5, 2:18, 2:19, 2:21, 7:24, 8:18, 8:19, 11:6, 11:24, 12:3, 12:20, 12:21, 13:25, 14:6, 14:25, 15:8, 18:6, 18:7, 18:10, 18:14, 18:16, 19:12, 19:20, 20:3, 20:5, 20:21, 20:24, 20:25, 21:2, 22:2, 22:21, 23:5, 23:7, 23:17, 23:19, 23:24, 23:25, 24:2, 24:7, 24:25, 25:1, 25:3, 25:10, 25:21, 26:8, 26:16, 27:22, 29:10, 29:20, 31:8, 31:10, 31:16, 33:4, 33:21, 34:6, 34:11, 35:7, 35:18
**BAILEY'S** [9] - 16:16, 18:23, 19:4, 19:25, 20:1, 20:11, 24:11, 25:15, 26:2
**BALL** [1] - 29:7
**BANDISHING** [1] - 8:13
**BAR** [2] - 10:2, 28:23
**BASE** [3] - 3:7, 16:15, 19:4
**BASIC** [1] - 2:24
**BATTERY** [1] - 26:5
**BECOME** [1] - 22:23
**BEFOREHAND** [1] - 35:12
**BEGINS** [1] - 17:21
**BEHALF** [6] - 15:9, 25:12, 25:15, 26:1, 26:10, 35:6
**BEHIND** [1] - 7:20
**BELABOR** [2] - 3:25, 10:15
**BEST** [1] - 28:19
**BETTER** [1] - 14:8
**BETWEEN** [9] - 6:14, 9:19, 10:6, 16:18, 19:22, 21:18, 23:7, 23:16, 23:24
**BIG** [2] - 27:17, 31:4
**BILLS** [1] - 24:1
**BINDING** [1] - 5:18
**BIT** [2] - 10:11, 27:11
**BLACK** [1] - 14:11
**BOP** [3] - 13:16, 13:17, 14:19
**BOTTOM** [1] - 22:4
**BOUND** [1] - 15:3
**BRAVED** [1] - 30:13
**BREACH** [4] - 16:11, 17:8, 17:11, 19:8
**BREAK** [1] - 18:2
**BREAKS** [1] - 5:15
**BRING** [2] - 4:11, 13:2
**BROADER** [1] - 9:13
**BUREAU** [1] - 2:13
**BUYS** [1] - 21:2

# C

**CANNOT** [1] - 25:17
**CAR** [4] - 36:5, 36:6, 36:18
**CARDIOLOGISTS** [1] - 20:8
**CAREER** [18] - 3:5, 3:21, 7:20, 8:8, 8:20, 10:2, 10:7, 11:6, 12:10, 15:22, 15:25, 16:1, 19:2, 26:25, 27:2, 30:5, 34:6, 34:9
**CAROLINA** [5] - 20:13, 20:17, 20:20, 20:23, 20:25
**CAROLINAS** [1] - 22:25
**CASE** [30] - 2:2, 2:22, 3:7, 5:4, 9:3, 9:21, 10:25, 11:20, 12:8, 15:18, 16:10, 18:25, 19:14, 19:25, 20:12, 20:13, 20:15, 20:17, 27:5, 27:7, 27:8, 29:20, 29:21, 35:2, 35:14, 35:16, 38:8
**CASES** [12] - 4:3, 4:12, 4:16, 8:13, 9:1, 10:22, 10:25, 16:9, 17:23, 17:25, 29:18
**CATEGORICAL** [1] - 9:19
**CATEGORY** [8] - 3:11, 11:8, 11:17, 16:16, 17:18, 19:6, 29:17, 30:9
**CAUGHT** [1] - 28:13
**CERTAIN** [2] - 13:22, 34:18
**CERTAINLY** [3] - 6:22, 14:10, 37:3
**CERTIFY** [1] - 38:6
**CHANCE** [2] - 30:14, 31:16
**CHANCES** [1] - 14:1
**CHANGE** [6] - 15:1, 29:23, 31:20, 31:22
**CHARACTERISTICS** [1] - 30:11
**CHARGED** [3] - 20:15, 21:4, 21:5
**CHEMIST** [1] - 7:18
**CIRCUIT** [1] - 4:2
**CIRCUIT** [7] - 4:17, 9:3, 9:9, 9:16, 9:22, 11:1, 16:9
**CIRCUITS** [3] - 4:4, 6:14, 6:15
**CIRCUMSTANCES** [2] - 30:6, 34:18
**CITED** [2] - 9:1, 9:21
**CITIZEN** [1] - 11:25
**CLASSES** [1] - 14:8
**CLEAR** [4] - 22:15, 22:21, 27:5, 37:11
**CLEAR** [1] - 36:9
**CLEARLY** [1] - 27:23
**CLERK** [1] - 2:4
**CLERK** [1] - 35:5
**CLIENT** [7] - 12:10, 12:13, 13:18, 21:14, 26:23, 28:19, 35:12
**CLIENTS** [2] - 28:3, 29:11
**CLIP** [1] - 21:25
**CLOSING** [1] - 36:2
**CMR** [1] - 38:15
**COCAINE** [8] - 4:17, 8:5, 8:18, 10:9, 17:22, 17:24, 20:6, 27:17
**COLLEAGUE** [2] - 10:2, 28:23
**COLLEAGUES** [1] - 6:19
**COLLECTION** [1] - 32:7
**COMING** [5] - 3:18, 22:23, 25:4, 28:4, 28:5
**COMMISSION** [2] - 6:21, 7:15
**COMMIT** [1] - 31:25
**COMMITTED** [1] - 18:7
**COMMUNICATIONS** [1] - 32:11
**COMMUNITIES** [2] - 25:20, 30:22
**COMMUNITY** [2] - 13:12, 26:8
**COMPLEX** [2] - 35:14, 35:15
**COMPUTERS** [1] - 32:11
**CONCERNED** [3] - 13:19, 36:21, 37:9
**CONCLUDED** [1] - 37:13
**CONDITIONS** [4] - 31:24, 32:9, 33:5
**CONDUCT** [6] - 8:1, 19:25, 20:1, 21:5, 24:11, 24:21
**CONFERRED** [1] - 21:7
**CONFINEMENT** [2] - 11:22, 31:11
**CONFISCATION** [1] - 32:14
**CONGRESS** [1] - 18:22
**CONSIDER** [4] - 10:13, 16:15, 24:6, 29:19
**CONSIDERATION** [5] - 28:13, 30:15, 30:16, 30:24, 33:18
**CONSIDERED** [4] - 3:5, 31:2, 32:14, 32:15
**CONSISTENT** [1] - 29:13
**CONSPIRACY** [5] - 11:11, 20:15, 21:4, 23:16, 24:4

**CONSTITUTE** [1] - 16:11
**CONTAIN** [1] - 35:10
**CONTEMPLATING** [1] - 24:6
**CONTEXT** [2] - 23:4, 24:10
**CONTINUALLY** [1] - 10:3
**CONTINUED** [1] - 12:23
**CONTINUES** [1] - 17:22
**CONTRABAND** [1] - 32:15
**CONTRARY** [1] - 34:19
**CONTRAST** [1] - 19:21
**CONTROL** [1] - 6:25
**CONTROLLED** [16] - 3:2, 3:3, 6:17, 7:7, 7:17, 7:25, 9:4, 9:16, 10:9, 18:15, 21:2, 22:1, 32:1, 32:3, 32:17, 32:23
**CONTROLLED** [4] - 6:16, 8:20, 8:22, 9:7
**CONVERSATION** [1] - 23:24
**CONVICTED** [3] - 8:18, 26:4, 26:6
**CONVICTION** [5] - 3:4, 17:21, 18:4, 34:13
**CONVICTIONS** [2] - 3:4, 10:5
**COOPERATE** [1] - 32:7
**CORRECT** [2] - 3:22, 38:7
**CORRECTION** [1] - 15:18
**CORRECTLY** [1] - 19:3
**COST** [3] - 11:22, 11:23, 35:3
**COUNSEL'S** [1] - 21:12
**COUNT** [1] - 11:11
**COUNT** [1] - 9:14
**COUNTRY** [1] - 22:12
**COURSE** [2] - 21:17, 27:13
**COURT** [65] - 2:1, 2:2, 2:7, 2:10, 2:15, 2:19, 2:24, 3:20, 3:23, 4:8, 4:14, 4:22, 5:4, 5:10, 5:17, 6:3, 6:9, 6:11, 7:13, 8:6, 9:23, 9:25, 10:12, 10:18, 10:21, 11:22, 12:15, 12:18, 13:10, 13:21, 14:3, 14:13, 14:21, 15:2, 15:7, 15:13, 15:16, 16:18, 16:23, 17:2, 18:20, 21:10, 21:16, 21:23, 26:17, 26:19, 27:2, 28:21, 28:25, 29:8, 29:15, 33:7, 33:17, 34:2, 34:5, 34:11, 35:13, 36:2, 36:12, 36:17, 36:22, 36:24, 37:5, 38:3, 38:15
**COURT** [5] - 3:14, 13:9, 14:12, 29:6, 29:7
**COURT** [52] - 2:4, 3:16, 4:1, 4:2, 4:3, 4:14, 4:16, 5:7, 5:9, 5:21, 5:24, 6:1, 6:6, 6:8, 6:13, 7:3, 8:7, 10:13, 10:19, 10:22, 11:3, 13:5, 13:17, 14:5, 14:16, 16:5, 16:13, 17:12, 18:25, 19:16, 19:21, 19:24, 21:6, 22:8, 23:4, 23:11, 24:5, 24:17,

24:23, 26:13, 27:6, 28:18, 29:12, 31:18, 32:6, 33:9, 33:11, 33:14, 33:15, 34:25, 35:5, 37:8
**COURT'S** [2] - 4:12, 24:14
**COURTROOM** [3] - 12:12, 12:14, 35:19
**CRACK** [2] - 27:16, 27:17
**CRC** [1] - 38:15
**CRIME** [4] - 5:23, 7:22, 18:7, 32:1
**CRIMINAL** [13] - 3:11, 10:5, 11:7, 11:16, 16:16, 17:18, 17:20, 19:5, 26:2, 29:17, 30:8
**CRR** [1] - 38:15
**CSOS** [4] - 36:4, 36:9, 36:17, 37:10
**CUNNINGHAM** [1] - 2:13
**CUSTODY** [4] - 3:11, 11:17, 20:19, 29:17
**CUSTOMERS** [1] - 23:9

**D**

**DANGEROUS** [1] - 26:15
**DANGERS** [2] - 22:11, 25:8
**DATA** [1] - 32:11
**DAYS** [3] - 28:14, 32:4, 35:2
**DEALER** [13] - 12:21, 13:5, 18:8, 18:10, 18:12, 18:13, 22:19, 25:1, 26:15, 27:13, 28:11, 28:17
**DEALERS** [3] - 20:8, 27:14, 28:3
**DEALING** [6] - 18:17, 20:3, 20:6, 20:7, 22:24, 31:5
**DEALS** [3] - 9:7, 9:8, 9:15
**DEALT** [1] - 9:3
**DECISION** [1] - 17:15
**DECLARATIONS** [1] - 5:7
**DEFECT** [1] - 34:15
**DEFENDANT** [3] - 2:23, 15:11, 33:6
**DEFENDANT** [19] - 2:25, 3:2, 7:21, 7:24, 15:19, 15:20, 15:24, 16:3, 16:19, 16:21, 17:5, 17:12, 17:13, 19:8, 19:11, 20:13, 20:16, 22:10, 34:19
**DEFENDANT'S** [7] - 9:1, 15:23, 17:5, 17:10, 17:13, 17:18, 24:21
**DEFENSE** [4] - 2:16, 8:8, 9:21, 19:22
**DEFENSE'S** [2] - 16:17, 33:14
**DEFINED** [4] - 7:2, 7:3, 9:9
**DEFINES** [1] - 6:25
**DEFINITION** [9] - 6:22, 8:20, 9:5, 9:7, 9:11, 9:14, 9:17, 9:19, 9:20
**DEFINITIONS** [1] - 6:16
**DEMONSTRATES** [1] - 20:11
**DENIED** [1] - 30:18
**DENY** [1] - 28:16

**DEPENDENT** [1] - 13:1
**DEPUTY** [1] - 2:4
**DESCRIBED** [1] - 23:22
**DESTROYS** [3] - 29:23, 29:24, 30:21
**DETAIL** [1] - 23:23
**DETERMINE** [2] - 9:12, 32:22
**DETERMINED** [1] - 32:5
**DEVICE** [1] - 32:12
**DIE** [1] - 28:4
**DIFFERENCE** [1] - 10:6
**DIFFERENT** [6] - 4:22, 4:25, 9:4, 9:17, 26:6, 29:7
**DIFFERENTLY** [2] - 27:13, 30:20
**DIFFICULT** [2] - 22:5, 35:14
**DIG** [1] - 25:21
**DIRECTED** [1] - 32:8
**DIRECTION** [1] - 13:13
**DIRECTLY** [1] - 4:17
**DISAGREE** [3] - 11:2, 11:3, 11:5
**DISCRETION** [1] - 19:17
**DISCUSS** [1] - 3:5
**DISCUSSION** [1] - 8:3
**DISKS** [1] - 21:20
**DISPOSAL** [2] - 32:14, 32:15
**DISREGARDING** [1] - 33:23
**DISTRIBUTE** [5] - 11:11, 17:24, 18:1, 23:2, 26:4
**DISTRICT** [2] - 38:3, 38:4
**DISTRICT** [1] - 6:20
**DNA** [1] - 32:7
**DONE** [3] - 13:3, 19:2, 31:1
**DOWN** [9] - 8:9, 9:15, 12:19, 18:1, 20:23, 24:1, 35:21, 35:22, 38:7
**DRESSED** [1] - 14:11
**DRIVES** [1] - 20:23
**DROPPED** [1] - 26:24
**DRUG** [25] - 8:24, 9:5, 9:8, 9:9, 9:14, 12:21, 12:24, 13:5, 13:15, 18:7, 20:8, 20:10, 25:1, 26:15, 27:13, 27:14, 27:20, 28:3, 28:10, 28:11, 28:17, 29:5, 31:13, 32:3, 32:5
**DRUGS** [17] - 18:19, 20:16, 20:22, 20:24, 21:1, 22:13, 22:17, 23:13, 23:20, 25:14, 25:18, 29:6, 29:22, 29:25, 30:18, 30:20
**DUBBED** [1] - 10:7
**DUFFEY** [2] - 12:9, 12:11

**E**

**EARLY** [1] - 7:10
**EFFECT** [1] - 29:21
**EITHER** [1] - 8:17
**ELECTRONIC** [1] - 32:11

**ELEVENTH** [6] - 4:6, 4:16, 5:1, 5:20, 11:1, 16:9
**END** [8] - 15:5, 15:19, 15:22, 16:12, 18:19, 20:14, 21:4, 29:13
**ENFORCEABLE** [1] - 34:23
**ENGAGED** [1] - 7:21
**ENHANCED** [1] - 18:24
**ENHANCEMENT** [1] - 27:8
**ENTERED** [5] - 21:14, 29:4, 33:9, 34:21, 35:2
**ENTIRE** [2] - 25:19, 28:18
**ENTIRELY** [1] - 4:25
**EPIDEMIC** [2] - 22:11, 25:23
**EQUATION** [2] - 4:4, 4:5
**ESPECIALLY** [1] - 14:20
**ESSENTIALLY** [2] - 20:4, 24:9
**ETHICAL** [1] - 28:21
**EVALUATION** [2] - 13:18, 31:14
**EVALUATIONS** [1] - 13:23
**EVIDENCE** [5] - 24:10, 26:5, 28:16, 29:3, 29:4
**EXACT** [1] - 28:16
**EXACTLY** [1] - 4:11
**EXAMPLE** [3] - 5:21, 6:23, 8:24
**EXCELLENT** [2] - 35:13, 35:15
**EXCEPTION** [2] - 11:6, 34:6
**EXCEPTIONS** [5] - 11:10, 33:8, 33:10, 34:7, 35:1
**EXERCISE** [1] - 19:17
**EXERCISED** [1] - 19:13
**EXHIBIT** [1] - 27:13
**EXHIBIT** [3] - 21:25, 23:6, 24:22
**EXHIBITS** [2] - 21:6, 21:22
**EXHIBITS** [1] - 21:21
**EXISTING** [1] - 20:25
**EXPLAIN** [1] - 34:12
**EXTENT** [3] - 13:16, 13:17, 17:20

## F

**F.3D** [1] - 16:10
**FABRIC** [1] - 29:25
**FACE** [3] - 17:15, 18:23, 19:6
**FACED** [1] - 17:14
**FACES** [1] - 19:7
**FACILITATED** [1] - 23:18
**FACING** [1] - 19:12
**FACT** [3] - 20:12, 28:13, 30:2
**FACTORS** [3] - 24:12, 29:19, 30:25
**FACTS** [1] - 3:14
**FALLS** [1] - 16:1
**FALSE** [1] - 17:22
**FAMILIAR** [1] - 6:24
**FAMILIES** [3] - 25:19, 29:23, 30:19

**FAMILY** [7] - 17:13, 30:16, 30:19, 35:24, 35:25, 36:15
**FAPR** [1] - 38:15
**FATHER** [2] - 13:7, 25:1
**FEBRUARY** [1] - 23:16
**FEDERAL** [1] - 6:16
**FEDERAL** [10] - 6:22, 7:6, 7:8, 7:12, 8:3, 9:11, 9:13, 9:20, 29:7, 31:25
**FEEDING** [1] - 25:22
**FEEDS** [1] - 25:2
**FELLOW** [1] - 28:23
**FELONY** [7] - 3:4, 8:24, 9:6, 9:8, 9:9, 9:14, 12:25
**FELT** [1] - 26:25
**FEMALE** [1] - 20:20
**FENTANYL** [6] - 11:12, 20:3, 20:7, 20:14, 22:3, 27:20
**FENTANYL-LACED** [4] - 20:3, 20:7, 20:14, 22:3
**FEW** [2] - 9:15, 35:1
**FILE** [8] - 6:7, 19:13, 23:11, 24:23, 27:6, 27:8, 35:6, 35:20
**FILED** [5] - 16:3, 17:17, 18:24, 20:2, 35:2
**FILING** [1] - 27:9
**FINDINGS** [1] - 3:15
**FINE** [5] - 3:12, 11:15, 11:18, 14:19, 31:12
**FIREARM** [7] - 6:24, 6:25, 7:1, 7:2, 7:3, 8:13
**FIRST** [10] - 7:10, 12:25, 22:1, 24:11, 26:20, 27:12, 27:16, 29:11, 29:18, 33:20
**FIVE** [2] - 11:14, 11:15
**FOLKS** [1] - 18:17
**FOLLOW** [2] - 10:19, 33:1
**FOLLOWING** [1] - 23:7
**FOREGOING** [1] - 38:6
**FORFEITURE** [2] - 11:19, 11:20
**FORMA** [1] - 35:4
**FORTH** [1] - 17:4
**FORTUNATE** [1] - 18:16
**FOUR** [2] - 4:4, 11:24
**FRANKLY** [1] - 25:25
**FRIENDS'** [1] - 30:16
**FRONT** [4] - 10:25, 11:2, 11:4, 12:9
**FULL** [2] - 12:14, 13:6
**FUNDAMENTAL** [1] - 34:15
**FUNDAMENTALLY** [1] - 15:1

## G

**GAINESVILLE** [3] - 20:24, 22:2, 23:18

**GAME** [1] - 29:7
**GARR** [1] - 5:8
**GBI** [5] - 21:2, 22:1, 25:14, 36:3, 37:8
**GED** [4] - 14:6, 14:13, 14:22, 31:15
**GENERAL** [1] - 14:19
**GENERALLY** [1] - 34:23
**GEORGIA** [4] - 2:13, 7:25, 8:9, 22:25
**GEORGIA** [1] - 38:4
**GIUNTA** [1] - 2:13
**GIVEN** [3] - 4:3, 10:23, 17:10
**GOVERNMENT** [19] - 2:7, 3:18, 3:19, 5:7, 6:7, 16:19, 16:22, 17:16, 18:24, 19:13, 19:19, 19:23, 23:6, 27:6, 27:9, 27:12, 28:9, 28:10, 33:8
**GOVERNMENT** [2] - 4:3, 20:4
**GOVERNMENT'S** [9] - 9:22, 17:9, 17:15, 19:17, 20:5, 21:21, 21:25, 24:22, 26:14
**GOVERNS** [3] - 8:21, 8:23
**GRAMS** [2] - 11:11, 11:12
**GREAT** [2] - 25:16, 31:1
**GREATER** [2] - 19:19, 24:15
**GREENBERG** [1] - 6:19
**GUIDELINE** [20] - 3:11, 3:12, 3:18, 6:24, 7:20, 10:17, 11:17, 11:18, 12:10, 15:5, 15:20, 19:3, 19:6, 19:15, 26:12, 29:13, 29:17, 33:12, 34:2
**GUIDELINES** [12] - 6:23, 7:6, 7:9, 7:10, 7:11, 7:19, 8:1, 9:17, 10:4, 16:14, 28:12, 33:13
**GUILTY** [4] - 21:15, 24:4, 34:14, 34:16
**GUN** [1] - 6:25
**GUY** [2] - 28:25, 31:4
**GUYS** [3] - 37:6, 37:7, 37:8

## H

**HALF** [2] - 21:1, 21:3
**HALL** [3] - 36:8, 36:9, 36:10
**HAMES** [34] - 2:17, 3:22, 3:25, 4:10, 4:15, 4:24, 5:5, 5:11, 5:19, 10:1, 10:13, 10:19, 12:7, 12:16, 12:19, 13:11, 13:22, 14:4, 14:16, 14:24, 15:3, 21:11, 26:20, 27:4, 28:22, 29:2, 29:9, 34:9, 35:8, 36:1, 36:16, 36:20, 36:23, 37:3
**HAMES** [37] - 2:17, 2:19, 3:6, 3:20, 6:3, 9:6, 9:25, 10:21, 10:23, 11:1, 11:10, 12:1, 12:6, 15:7, 15:8, 16:12, 18:9, 21:7, 21:10, 22:6,

24:8, 24:24, 26:19, 29:15, 30:4, 30:12, 31:1, 31:4, 31:20, 33:17, 33:21, 34:5, 35:13, 35:24, 36:5, 36:14, 36:17
**HAND** [3] - 21:6, 21:20, 23:20
**HANDLE** [4] - 31:5, 37:7, 37:8, 37:10
**HANGING** [1] - 36:8
**HARD** [1] - 29:10
**HARSHLY** [1] - 7:23
**HEALTH** [4] - 13:18, 31:14, 32:25, 33:2
**HEAR** [5] - 12:1, 12:2, 12:4, 12:5, 33:9
**HEARING** [1] - 37:13
**HELD** [1] - 2:1
**HELL** [2] - 23:25, 27:25
**HELP** [3] - 12:22, 12:23, 13:2
**HEREBY** [1] - 38:6
**HEROIN** [5] - 11:12, 20:3, 20:8, 20:14, 22:3
**HERTZBERG** [24] - 2:9, 2:11, 3:19, 6:5, 6:10, 6:12, 7:14, 8:7, 9:24, 11:21, 15:15, 15:17, 16:20, 17:3, 18:21, 21:19, 21:24, 22:9, 23:12, 24:24, 26:18, 33:10, 34:1, 36:11
**HERTZBERG** [15] - 2:11, 6:4, 11:19, 12:5, 15:14, 16:23, 26:20, 28:25, 29:1, 29:24, 31:4, 31:6, 35:14, 36:2, 36:4
**HIGH** [1] - 26:24
**HIGHER** [3] - 19:6, 19:7, 19:15
**HIGHEST** [1] - 30:9
**HIMSELF** [3] - 14:9, 18:7, 23:20
**HISTORIES** [1] - 26:2
**HISTORY** [13] - 3:11, 10:5, 11:8, 11:16, 16:16, 17:18, 17:20, 18:23, 19:5, 20:11, 29:17, 30:9
**HOBBS** [1] - 5:22
**HOLD** [1] - 16:23
**HOLE** [1] - 29:25
**HOMELESS** [2] - 25:2, 25:22
**HONOR** [54] - 2:9, 2:17, 3:19, 3:25, 4:11, 4:21, 4:25, 5:1, 5:5, 5:11, 5:20, 6:2, 6:5, 6:6, 6:10, 6:12, 8:19, 9:24, 10:1, 10:6, 10:20, 11:21, 12:7, 12:8, 13:13, 14:4, 14:10, 14:24, 15:5, 15:6, 15:15, 15:17, 18:13, 19:9, 21:11, 21:19, 21:24, 22:9, 26:11, 26:18, 26:20, 26:23, 27:4, 27:16, 28:7, 28:8, 29:3, 33:10, 34:3, 34:10, 35:8, 36:11, 36:16, 36:20
**HONOR'S** [1] - 6:19
**HONORABLE** [1] - 38:16

**HOUSE** [3] - 23:18, 23:21, 32:10
**HURTING** [2] - 30:21, 30:22
**HUTCHINSON** [1] - 16:10

## I

**IFLUAPLANE** [1] - 8:16
**IGNORE** [1] - 19:17
**IGNORING** [1] - 16:6
**ILLINOIS** [1] - 9:13
**IMAGINE** [1] - 8:15
**IMPORTANCE** [1] - 10:6
**IMPORTANT** [3] - 14:5, 23:3, 24:5
**IMPOSE** [5] - 19:1, 19:18, 24:14, 24:17, 29:12
**IMPOSED** [2] - 33:12, 33:15
**IMPRISONMENT** [2] - 17:7, 32:4
**IN** [1] - 2:1
**INABILITY** [1] - 8:12
**INCARCERATED** [1] - 14:6
**INCLUDE** [1] - 13:15
**INCORPORATE** [3] - 6:16, 6:21, 7:16
**INCORPORATES** [1] - 7:8
**INDICATES** [2] - 5:19, 7:14
**INDICATING** [1] - 24:2
**INDIVIDUAL** [3] - 14:11, 20:19, 26:3
**INDIVIDUALS** [1] - 18:23
**INFERENCE** [1] - 5:3
**INFLATING** [2] - 28:9, 28:10
**INFORMANT** [2] - 20:4, 20:6
**INFORMATION** [6] - 17:17, 17:22, 18:25, 19:13, 27:6, 27:7
**INFORMED** [1] - 14:7
**INSTANCE** [1] - 13:19
**INSTANT** [1] - 3:1
**INSTEAD** [1] - 17:9
**INTENDS** [1] - 14:7
**INTENT** [6] - 10:9, 17:24, 18:1, 18:5, 26:4, 26:22
**INTENTIONALLY** [1] - 7:8
**INTERACTION** [1] - 23:4
**INTERACTIONS** [1] - 13:25
**INTERDICTION** [1] - 21:3
**INTERESTING** [1] - 9:3
**INTRODUCE** [1] - 21:21
**INVESTIGATION** [1] - 2:14
**INVOLUTIONARY** [1] - 34:14
**INVOLVED** [3] - 11:20, 20:6, 25:12
**INVOLVING** [3] - 8:13, 9:10, 20:13
**ISOMER** [2] - 8:5, 8:16
**ISSUE** [3] - 4:18, 10:15, 10:16
**ISSUES** [1] - 13:24
**ITSELF** [1] - 34:22

## J

**JACKSON** [1] - 5:2
**JOB** [6] - 28:19, 31:1, 35:14, 35:15, 36:12, 36:13
**JOHN** [1] - 2:13
**JOHNSON** [2] - 14:18, 16:24
**JONES** [1] - 38:16
**JUDGE** [8] - 6:19, 6:20, 8:10, 8:11, 12:9, 12:11, 25:17
**JUDGE** [2] - 29:21, 37:8
**JUDGES** [1] - 6:20
**JUDGMENT** [1] - 35:2
**JUSTIFICATION** [1] - 26:12

## K

**KEEP** [2] - 22:23, 28:5
**KENNEDY** [1] - 4:18
**KID** [1] - 31:19
**KILL** [3] - 25:6, 27:17, 27:19
**KILLING** [1] - 23:13
**KILLS** [1] - 29:22
**KIND** [14] - 5:14, 5:15, 5:25, 10:8, 10:15, 12:9, 12:11, 12:24, 13:1, 13:2, 13:23, 14:24, 27:18, 32:22
**KNOWN** [1] - 20:25
**KNOWS** [2] - 6:6, 27:25

## L

**LACED** [4] - 20:3, 20:7, 20:14, 22:3
**LAGRANGE** [2] - 22:24, 23:1
**LAID** [1] - 5:12
**LAND** [1] - 6:20
**LAST** [6] - 5:8, 9:25, 12:5, 14:4, 23:15, 26:19
**LAUGHED** [1] - 5:24
**LAW** [16] - 5:11, 5:19, 7:3, 7:8, 7:9, 7:12, 7:16, 8:3, 9:18, 10:11, 14:12, 26:7, 27:1, 28:21, 34:19
**LAW-ABIDING** [1] - 26:7
**LAWS** [2] - 7:17, 7:25
**LAWYERS** [3] - 35:18, 35:22, 37:7
**LAYPERSON** [2] - 10:8, 10:10
**LEAST** [6] - 3:1, 3:3, 3:4, 11:11, 11:12, 32:4
**LEAVE** [2] - 11:7, 35:4
**LENITY** [1] - 5:15
**LESS** [3] - 19:1, 24:20
**LETTER** [2] - 26:3, 26:6
**LETTERS** [3] - 25:11, 26:1, 26:9
**LEVEL** [13] - 2:25, 3:7, 3:9, 3:10, 11:7, 11:16, 16:15, 18:10, 18:11, 19:4, 22:19, 24:3, 29:16
**LIFE** [12] - 11:24, 13:1, 15:1, 17:19,

18:6, 18:7, 18:16, 19:1, 19:11, 31:20, 31:21, 31:22
**LIFESTYLE** [1] - 14:9
**LIGHT** [1] - 31:18
**LIKELY** [1] - 6:1
**LIP** [1] - 16:8
**LISTEN** [1] - 19:10
**LISTENED** [1] - 33:19
**LIVES** [6] - 18:19, 23:14, 25:13, 25:18, 29:22, 29:23
**LOAD** [1] - 20:16
**LOADING** [1] - 21:24
**LOCAL** [1] - 31:25
**LOOK** [5] - 9:11, 13:3, 13:16, 28:2, 31:2
**LOOKED** [1] - 30:25
**LOOKING** [7] - 7:15, 10:24, 12:10, 25:23, 30:6, 30:7, 30:13
**LOOKS** [1] - 8:16
**LOST** [1] - 24:8
**LOVE** [2] - 25:7, 25:19
**LOW** [5] - 15:5, 15:19, 15:22, 16:12, 29:13
**LOWEST** [1] - 24:3
**LYEDREKUS** [9] - 2:5, 20:21, 24:25, 25:1, 25:3, 26:16

## M

**MAJORITY** [3] - 6:14, 25:25, 36:14
**MAN** [2] - 13:6, 25:2
**MANAGED** [1] - 24:5
**MANDATORY** [2] - 11:15, 31:24
**MARCH** [2] - 20:16, 21:3
**MARKETING** [3] - 22:15, 28:1, 28:17
**MARSHAL** [1] - 35:18
**MARSHALS** [1] - 36:25
**MATCH** [1] - 9:19
**MATERIAL** [2] - 32:14, 32:15
**MATTER** [5] - 4:5, 27:10, 28:11
**MATTERS** [1] - 23:3
**MAX** [1] - 19:7
**MAXIMUM** [2] - 3:6, 24:18
**MCCOY** [1] - 4:20
**MEAN** [1] - 27:21
**MEANS** [2] - 7:1, 13:23
**MEDIA** [1] - 32:12
**MEDICAL** [1] - 27:21
**MEDICATIONS** [1] - 33:2
**MEET** [1] - 24:15
**MEMO** [1] - 3:23
**MEMORANDUM** [19] - 4:1, 5:6, 5:12, 5:14, 6:8, 9:2, 10:14, 10:20, 10:23, 10:24, 12:2, 13:15, 15:24,

16:2, 18:9, 20:2, 21:15, 31:3, 33:20
**MEMOS** [1] - 26:24
**MENTAL** [4] - 13:18, 31:13, 32:25, 33:2
**MERELY** [1] - 22:19
**METH** [2] - 27:18
**METHAMPHETAMINE** [1] - 20:7
**MIDDLE** [1] - 6:20
**MIGHT** [3] - 4:21, 14:18, 25:21
**MILLION** [3] - 3:13, 11:15, 11:18
**MINIMIZES** [1] - 17:19
**MINIMUM** [1] - 11:15
**MINORITY** [1] - 26:9
**MINUTE** [1] - 21:25
**MISSED** [1] - 34:3
**MODIFICATIONS** [1] - 17:25
**MONDAY** [2] - 18:10, 20:2
**MONEY** [3] - 13:2, 20:22, 28:3
**MONEYMAKER** [1] - 23:14
**MONTH** [1] - 18:4
**MONTHS** [20] - 3:12, 11:18, 15:21, 16:2, 16:5, 16:17, 16:19, 16:21, 16:22, 17:6, 17:10, 24:13, 24:16, 26:14, 29:18, 31:16, 33:13, 33:18, 33:25
**MONTHS'** [1] - 31:10
**MOORE** [2] - 8:10, 8:12
**MORNING** [8] - 2:8, 2:9, 2:10, 2:15, 2:17, 2:19, 2:20, 5:6
**MOST** [1] - 13:10
**MR** [58] - 2:9, 2:11, 2:17, 3:19, 3:22, 3:25, 4:10, 4:15, 4:24, 5:5, 5:11, 5:19, 6:5, 6:10, 6:12, 7:14, 8:7, 9:24, 10:1, 10:13, 10:19, 11:21, 12:7, 12:16, 12:19, 13:11, 13:22, 14:4, 14:16, 14:24, 15:3, 15:15, 15:17, 16:20, 17:3, 18:21, 21:11, 21:19, 21:24, 22:9, 23:12, 24:24, 26:18, 26:20, 27:4, 28:22, 29:2, 29:9, 33:10, 34:1, 34:9, 35:8, 36:1, 36:11, 36:16, 36:20, 36:23, 37:3
**MULTIPLE** [1] - 17:23
**MUST** [13] - 31:25, 32:1, 32:2, 32:3, 32:7, 32:10, 32:17, 32:18, 32:21, 32:23, 32:25, 33:2, 35:1

## N

**NARCOTIC** [2] - 9:10, 9:12
**NATURE** [1] - 30:6
**NEARLY** [1] - 17:21
**NECESSARY** [2] - 24:15, 24:17

**NEED** [4] - 7:18, 9:19, 23:12, 34:11
**NEEDED** [2] - 12:22, 12:23
**NEGOTIATED** [2] - 11:14, 33:7
**NEIGHBORHOODS** [2] - 29:24, 30:22
**NEVER** [1] - 26:22
**NEW** [1] - 8:8
**NEXT** [1] - 11:4
**NIGHT** [1] - 5:8
**NINE** [3] - 6:9, 6:11, 10:22
**NOAH** [1] - 2:11
**NOBODY** [4] - 13:9, 24:1, 27:15, 31:22
**NONE** [2] - 3:19, 8:14
**NONETHELESS** [1] - 18:3
**NORTH** [6] - 20:13, 20:17, 20:19, 20:23, 20:25, 22:25
**NORTHERN** [1] - 38:4
**NOTE** [4] - 11:5, 11:10, 34:5, 35:10
**NOTED** [2] - 6:20, 20:12
**NOTICE** [2] - 35:1, 35:6
**NOTICED** [1] - 27:23
**NOVEMBER** [1] - 4:19
**NUANCED** [1] - 10:11
**NUMBER** [1] - 6:17
**NUMEROUS** [1] - 17:24

## O

**O'CLOCK** [1] - 37:13
**OBJECT** [1] - 21:18
**OBJECTION** [12] - 3:15, 3:20, 10:17, 21:8, 21:10, 21:13, 22:7, 26:25, 28:9, 33:12, 33:14
**OBJECTIONABLE** [1] - 21:14
**OBJECTIONS** [3] - 3:18, 21:17, 21:18
**OBLIGATION** [3] - 24:14, 26:25, 28:19
**OBSTRUCTION** [1] - 17:23
**OBTAINING** [2] - 14:22, 31:15
**OBVIOUSLY** [4] - 10:16, 13:7, 15:3, 30:10
**OCCUR** [1] - 6:1
**OCCURRED** [1] - 21:3
**OF** [1] - 38:4
**OFFEND** [2] - 30:1, 30:23
**OFFENDED** [1] - 28:23
**OFFENDER** [16] - 3:5, 3:21, 7:20, 8:20, 10:2, 10:7, 12:10, 15:22, 15:25, 16:1, 19:2, 26:25, 27:3, 30:5, 34:6, 34:9
**OFFENSE** [21] - 2:25, 3:1, 3:2, 3:3, 3:7, 3:10, 7:7, 9:5, 9:10, 9:16, 10:10, 11:7, 11:16, 16:15, 18:21, 19:4, 29:16, 30:3, 31:7, 33:23

**OFFICE** [3] - 32:6, 32:12, 36:7
**OFFICER** [4] - 14:19, 14:23, 16:25, 34:3
**OFFICER** [1] - 32:8
**OFFICER** [3] - 32:13, 32:16, 32:20
**OFFICERS** [1] - 17:23
**OFFICES** [1] - 36:4
**OFFICIAL** [1] - 38:15
**OLD** [2] - 3:1, 12:25
**ONE** [1] - 11:11
**ONE** [24] - 3:4, 4:4, 7:18, 8:11, 9:1, 9:4, 10:1, 10:18, 10:25, 15:22, 16:23, 20:1, 20:9, 20:10, 21:21, 27:15, 28:14, 29:5, 29:9, 29:11, 32:3, 33:21, 36:9, 36:25
**ONETAYE** [1] - 2:5
**OPEN** [2] - 20:13, 27:10
**OPEN** [1] - 2:1
**OPINION** [3] - 4:8, 4:10, 5:17
**OPINIONS** [1] - 6:18
**OPIOID** [1] - 22:11
**OPPORTUNITY** [3] - 30:19, 31:19, 31:21
**OPPOSITE** [1] - 28:16
**OPTION** [1] - 16:5
**OPTIONS** [2] - 11:9, 19:9
**ORAL** [1] - 4:19
**ORDER** [2] - 9:12, 30:14
**ORGANIC** [1] - 7:18
**ORIGINAL** [1] - 20:2
**OTHERWISE** [4] - 5:11, 5:25, 16:14, 33:13
**OUTLINED** [1] - 30:24
**OWN** [2] - 13:16, 29:23

**P**

**PAGE** [1] - 16:23
**PAGES** [1] - 38:6
**PANEL** [1] - 4:23
**PANELS** [2] - 4:23, 4:25
**PAPERS** [1] - 32:11
**PARAGRAPH** [4] - 17:4, 20:12, 20:18, 20:19
**PARAGRAPHS** [1] - 9:15
**PART** [6] - 9:7, 9:8, 12:21, 14:5, 14:13, 30:1
**PARTICIPATE** [2] - 32:18, 32:25
**PARTICULAR** [8] - 7:17, 7:22, 8:4, 8:12, 8:15, 20:9, 20:10, 23:21
**PARTICULARLY** [1] - 34:18
**PARTIES'** [1] - 16:6
**PAUPERIS** [1] - 35:4
**PAY** [1] - 35:3

**PAYING** [1] - 24:1
**PENALTIES** [3] - 17:14, 17:16, 18:24
**PENALTY** [2] - 3:6, 11:14
**PENDING** [3] - 4:12, 4:16, 4:19
**PEOPLE** [21] - 12:16, 13:1, 13:7, 22:20, 23:14, 24:4, 25:15, 25:18, 25:19, 26:1, 26:9, 29:22, 30:11, 30:20, 30:21, 33:24, 35:23, 36:8, 36:13, 36:14
**PEOPLE'S** [3] - 23:14, 25:13, 29:22
**PER** [1] - 34:20
**PERIODIC** [1] - 32:5
**PERMIT** [1] - 32:13
**PERSON** [5] - 13:6, 20:10, 25:16, 26:6, 32:10
**PERSPECTIVE** [1] - 28:3
**PERSUASIVE** [1] - 5:18
**PHONE** [1] - 23:6
**PHONETIC** [2] - 5:8, 8:16
**PICTURE** [2] - 13:6, 28:18
**PIECE** [1] - 20:1
**PILING** [1] - 24:9
**PLAY** [3] - 21:7, 21:22, 23:15
**PLAYED** [3] - 22:8, 23:11, 24:23
**PLEA** [20] - 11:14, 15:3, 15:18, 16:3, 16:8, 16:11, 16:21, 17:3, 19:8, 19:16, 21:15, 29:4, 29:14, 30:7, 33:7, 34:14, 34:16, 34:20, 34:21, 35:10
**PLEAD** [1] - 24:4
**PLEASURE** [1] - 8:10
**PLED** [1] - 18:1
**POINT** [5] - 5:13, 8:25, 14:25, 21:12, 22:17
**POINTED** [1] - 12:11
**POINTS** [1] - 10:5
**POISON** [2] - 18:17, 25:16
**POLE** [1] - 24:3
**POLICY** [1] - 7:20
**POSITION** [1] - 6:2
**POSITIONS** [2] - 19:22
**POSSESS** [3] - 32:1, 32:17, 32:23
**POSSESSION** [7] - 8:14, 10:8, 17:23, 17:25, 18:1, 18:4, 26:4
**POSSIBLE** [1] - 5:1
**POSSIBLY** [1] - 5:9
**POWERFUL** [1] - 36:2
**PRACTICING** [1] - 27:16
**PREPARE** [1] - 35:5
**PRESCRIBED** [1] - 33:2
**PRESCRIPTION** [3] - 27:20, 32:18, 32:24
**PRESENT** [3] - 12:3, 23:17, 34:24
**PRESENTENCE** [3] - 2:21, 3:14,

16:25
**PRESERVE** [1] - 27:1
**PRESUMABLY** [1] - 3:8
**PRETTY** [2] - 12:14, 22:23
**PREVIOUS** [1] - 27:7
**PRISON** [2] - 19:2, 19:11
**PROBATION** [3] - 17:24, 32:5, 32:8
**PROBATION** [3] - 32:13, 32:16, 32:20
**PROBATION** [4] - 14:19, 14:23, 16:25, 34:3
**PROBLEM** [3] - 5:10, 25:24, 27:2
**PROBLEMS** [1] - 29:5
**PROCEEDING** [1] - 34:15
**PROCEEDINGS** [2] - 13:20, 38:7
**PRODUCT** [3] - 23:9, 25:5, 27:14
**PROFESSION** [1] - 27:21
**PROFESSOR** [1] - 5:8
**PROGRAM** [4] - 13:15, 31:13, 33:1
**PROGRAMS** [1] - 32:19
**PROHIBITED** [1] - 32:22
**PROLIFIC** [2] - 18:13, 26:15
**PROMISE** [1] - 17:9
**PROMOTING** [1] - 25:8
**PROMULGATING** [1] - 25:23
**PRONOUNCE** [3] - 8:4, 8:12, 8:15
**PROPER** [1] - 24:10
**PROPERTY** [1] - 32:10
**PROVIDE** [1] - 6:8
**PROVIDED** [3] - 18:22, 19:16, 22:6
**PROVIDER** [1] - 33:3
**PROVIDING** [1] - 17:22
**PROVISIONS** [1] - 9:4
**PSR** [2] - 20:12, 23:23
**PSYCHOLOGICALLY** [1] - 13:24
**PUNISH** [2] - 7:23, 10:3
**PUNISHED** [1] - 14:15
**PURCHASES** [1] - 22:1
**PURPOSES** [1] - 24:16
**PUT** [3] - 15:23, 20:4, 23:3
**PWIT** [1] - 18:3

**Q**

**QUALIFIED** [1] - 13:23
**QUALIFY** [1] - 5:23
**QUESTIONS** [1] - 33:4
**QUICKLY** [1] - 5:9
**QUITE** [2] - 7:14, 36:13
**QUOTE** [2] - 23:8, 24:1

**R**

**RAISE** [1] - 20:22
**RANGE** [13] - 3:12, 11:17, 11:18, 15:5, 15:20, 15:22, 16:1, 19:6,

19:15, 26:12, 29:13, 29:18
**RDR** [1] - 38:15
**REACH** [1] - 22:25
**REACHING** [1] - 25:3
**READ** [14] - 3:23, 5:5, 6:9, 6:11, 9:15, 10:22, 11:9, 12:1, 25:11, 28:1, 28:2, 31:23, 33:20
**READING** [1] - 11:1
**READY** [1] - 30:24
**REAL** [2] - 8:14, 22:16
**REALIZE** [1] - 35:23
**REALLY** [3] - 8:2, 13:5, 17:19
**REASON** [2] - 8:19, 26:13
**REASONABLE** [4] - 16:7, 24:6, 26:14, 33:16
**REASONS** [2] - 6:18, 15:23
**RECEIVED** [1] - 5:7
**RECENTLY** [1] - 4:20
**RECIDIVIST** [2] - 7:21, 26:15
**RECOGNIZE** [7] - 10:7, 13:16, 17:11, 17:12, 17:13, 24:13, 25:10
**RECOGNIZED** [1] - 8:1
**RECOGNIZES** [1] - 22:11
**RECOGNIZING** [4] - 17:10, 19:25, 23:13, 25:8
**RECOMMEND** [13] - 14:3, 14:5, 15:19, 15:20, 15:25, 16:4, 16:21, 16:22, 17:6, 17:10, 31:12, 31:13, 31:14
**RECOMMENDATION** [9] - 10:20, 14:17, 15:4, 15:6, 16:17, 17:5, 19:10, 19:18, 26:14
**RECOMMENDATIONS** [2] - 13:14, 16:6
**RECOMMENDED** [2] - 2:25, 14:21
**RECOMMENDING** [3] - 16:12, 19:14, 19:19
**RECORD** [4] - 6:7, 12:14, 27:5, 34:8
**RECORDING** [1] - 23:6
**RECORDS** [1] - 12:13
**REDUCTION** [1] - 3:9
**REFERENCE** [3] - 7:1, 7:4, 8:22
**REFERENCES** [4] - 7:4, 7:5, 7:12, 9:18
**REFERRING** [4] - 6:25, 7:7, 17:4, 20:18
**REFLECTED** [1] - 20:18
**REFRAIN** [1] - 32:2
**REGARDING** [1] - 3:21
**REGARDLESS** [1] - 34:2
**REGIONAL** [1] - 18:14
**REGULAR** [1] - 22:23
**REGULATIONS** [1] - 33:1
**RELEASE** [6] - 11:24, 31:12, 31:24,

32:9, 33:5, 34:4
**RELEASED** [1] - 32:4
**RELEVANCE** [1] - 21:11
**REMAIN** [1] - 35:18
**REMEDY** [1] - 17:8
**REMINDS** [1] - 16:5
**REMOVE** [1] - 7:11
**REPEATEDLY** [1] - 27:24
**REPORT** [4] - 2:21, 3:15, 17:1, 30:8
**REPORTER** [1] - 38:15
**REPRESENTED** [1] - 15:8
**REPRESENTING** [2] - 2:7, 2:16
**REPRESENTS** [1] - 26:8
**REQUEST** [3] - 13:17, 16:4, 35:5
**REQUIRE** [1] - 15:19
**REQUIRED** [5] - 15:20, 15:25, 16:13, 18:25, 32:19
**REQUIRES** [1] - 16:4
**RESIDENT** [1] - 32:10
**RESIDENTIAL** [2] - 13:15, 31:13
**RESPECT** [3] - 8:21, 21:5, 25:22
**RESPECTFULLY** [2] - 11:2, 11:5
**RESPONSE** [1] - 6:7
**RESPONSIBILITY** [1] - 3:10
**RESTRAINT** [2] - 19:14, 19:18
**RESULT** [1] - 3:7
**REVIEWED** [1] - 2:21
**REVISED** [1] - 16:2
**REVOCATIONS** [1] - 17:25
**RIGHTS** [5] - 34:12, 34:20, 34:22, 35:9, 35:11
**ROBBERY** [2] - 5:23, 26:7
**ROBE** [1] - 14:11
**ROBERT** [1] - 2:13
**RPR** [1] - 38:15
**RUDE** [1] - 29:11
**RUIN** [1] - 18:19
**RUINING** [1] - 23:14
**RUINS** [3] - 25:18, 25:19, 25:20
**RULE** [1] - 5:15
**RULED** [1] - 4:7
**RULES** [1] - 33:1
**RULING** [2] - 30:4, 30:5
**RULINGS** [1] - 11:10
**RUN** [1] - 24:1
**RUTH** [3] - 9:2, 9:3, 9:21

## S

**SAFE** [1] - 22:12
**SAFELY** [2] - 36:5, 36:8
**SALE** [1] - 17:21
**SALESMAN** [1] - 25:3
**SAVANNAH** [1] - 8:9

**SCHECHTMAN** [3] - 2:12, 35:15, 36:3
**SCHEDULE** [1] - 13:8
**SCHOOL** [1] - 26:24
**SCOURGE** [1] - 25:17
**SEARCH** [1] - 32:12
**SEATED** [1] - 2:12
**SECOND** [5] - 16:23, 33:21, 35:21, 35:22, 36:19
**SEE** [8] - 5:2, 21:11, 21:13, 22:16, 23:8, 26:11, 26:13, 30:20
**SEEM** [1] - 28:22
**SEGMENT** [1] - 26:7
**SELL** [6] - 10:9, 20:22, 22:20, 22:22, 27:14
**SELLING** [5] - 22:14, 22:20, 29:25, 30:18
**SEND** [2] - 36:25, 37:5
**SENSE** [1] - 6:17
**SENT** [2] - 37:1, 37:6
**SENTENCE** [21] - 15:21, 16:1, 16:4, 16:7, 19:1, 19:10, 19:14, 19:19, 24:6, 24:14, 30:7, 30:24, 31:8, 31:10, 31:18, 33:8, 33:16, 33:25, 34:18, 34:19, 34:22
**SENTENCED** [1] - 17:6
**SENTENCING** [1] - 6:21
**SENTENCING** [21] - 4:1, 5:5, 5:12, 5:13, 6:8, 7:19, 8:1, 9:1, 10:14, 10:20, 11:9, 12:12, 13:14, 15:23, 16:2, 18:9, 20:2, 21:15, 24:16, 26:23, 33:20
**SEPTEMBER** [1] - 38:9
**SERIOUS** [11] - 8:24, 9:5, 9:8, 9:9, 9:14, 18:21, 18:22, 29:20, 30:2, 31:7, 33:23
**SERVICE** [1] - 16:8
**SET** [3] - 10:3, 10:4, 32:20
**SETTING** [1] - 17:4
**SEVEN** [2] - 31:11, 34:5
**SEVENTH** [3] - 9:2, 9:9, 9:16
**SEVERAL** [1] - 12:8
**SHALL** [1] - 32:13
**SHAPE** [3] - 37:1, 37:6
**SHIT** [2] - 22:16, 24:1
**SHOW** [1] - 12:13
**SHOWING** [1] - 21:25
**SHOWS** [4] - 13:9, 13:11, 25:2, 28:16
**SICK** [1] - 25:6
**SIDE** [4] - 4:4, 4:5, 6:15, 9:22
**SIDES** [1] - 24:25
**SIGNIFICANT** [1] - 17:14
**SIGNIFICANTLY** [1] - 14:2
**SIMILAR** [2] - 12:9, 26:2
**SIMPLE** [1] - 17:25

**SIMPLY** [2] - 27:12, 28:17
**SIT** [3] - 28:15, 35:21, 35:22
**SITTING** [3] - 35:23, 35:25, 36:15
**SITUATION** [1] - 30:6
**SOCIETAL** [1] - 25:24
**SOCIETY** [3] - 25:17, 29:25, 30:21
**SOLD** [1] - 25:14
**SOLVE** [1] - 25:23
**SOMEWHAT** [1] - 4:6
**SOON** [1] - 37:10
**SORRY** [1] - 15:12
**SORT** [2] - 7:22, 16:8
**SOUND** [1] - 22:5
**SOURCE** [3] - 18:14, 20:21, 20:25
**SOUTH** [1] - 8:9
**SPARE** [1] - 25:2
**SPECIAL** [3] - 11:19, 31:11, 32:9
**SPECIAL** [1] - 2:12
**SPECIALIST** [1] - 20:5
**SPECIALITIES** [1] - 20:9
**SPECIFIC** [2] - 7:1, 7:11
**SPECIFICALLY** [9] - 4:17, 9:18, 15:21, 16:20, 17:4, 17:16, 19:15, 20:12, 35:8
**SPELLED** [1] - 6:18
**SPLIT** [3] - 4:2, 6:14, 9:22
**STACK** [2] - 18:6, 18:16
**STACKED** [2] - 13:1, 17:19
**STAND** [1] - 31:8
**STANDARD** [1] - 35:11
**START** [3] - 15:17, 24:22, 29:16
**STARTED** [2] - 8:8, 27:16
**STAT** [1] - 19:7
**STATE** [12] - 6:6, 7:2, 7:8, 7:16, 7:17, 9:18, 9:19, 10:23, 29:6, 31:25, 33:11
**STATE** [1] - 7:25
**STATES** [10] - 2:5, 2:12, 4:14, 4:15, 4:18, 4:20, 7:19, 9:2, 11:25, 32:13
**STATES** [1] - 17:5
**STATES** [1] - 38:3
**STATUTE** [2] - 7:4, 9:13
**STATUTES** [1] - 7:6
**STATUTORY** [4] - 3:6, 11:14, 24:18, 34:17
**STAY** [1] - 36:19
**STEVE** [1] - 38:16
**STILL** [6] - 16:17, 19:5, 25:20, 31:19, 33:12, 33:15
**STOPPED** [1] - 21:2
**STORAGE** [1] - 32:12
**STREET** [3] - 18:10, 18:11, 22:19
**STREET-LEVEL** [3] - 18:10, 18:11, 22:19

**STRENGTH** [1] - 22:13
**STRESS** [1] - 25:17
**STRONG** [4] - 27:25, 28:6, 28:7, 30:16
**STRONGLY** [1] - 7:14
**STUFF** [4] - 27:18, 27:24, 28:6, 28:7
**SUBMIT** [4] - 18:13, 32:3, 32:10, 32:21
**SUBMITTED** [3] - 25:11, 26:1, 26:9
**SUBSTANCE** [1] - 6:16
**SUBSTANCE** [13] - 3:2, 7:7, 7:17, 7:25, 9:4, 9:16, 32:2, 32:3, 32:17, 32:19, 32:21, 32:22, 32:23
**SUBSTANCES** [3] - 8:20, 8:23, 9:7
**SUBSTANCES** [4] - 3:3, 6:17, 10:9, 18:15
**SUCCESS** [1] - 14:1
**SUFFICIENT** [1] - 24:15
**SUGGEST** [1] - 22:10
**SUGGESTED** [1] - 20:3
**SUGGESTION** [2] - 14:18, 22:18
**SUPERIOR** [1] - 37:8
**SUPERVISED** [6] - 11:23, 31:11, 31:24, 32:9, 33:5, 34:4
**SUPERVISION** [1] - 11:23
**SUPPLY** [3] - 18:14, 20:21, 21:1
**SUPPORT** [4] - 13:11, 25:11, 30:15, 30:17
**SUPPORTING** [1] - 30:12
**SUPPORTS** [1] - 26:8
**SUPREME** [7] - 4:14, 4:15, 5:2, 5:21, 5:24, 11:3, 31:18
**SURPRISINGLY** [1] - 4:6
**SUSTAINED** [1] - 33:14

## T

**TABLE** [1] - 13:2
**TACTIC** [1] - 22:15
**TALKS** [1] - 7:7
**TAMPERING** [1] - 26:5
**TAYLOR** [2] - 5:21, 16:10
**TEARS** [1] - 29:25
**TEN** [1] - 19:1
**TENDS** [1] - 5:16
**TERMS** [2] - 10:16, 33:4
**TEST** [1] - 32:3
**TESTING** [1] - 32:21
**TESTS** [1] - 32:5
**THE** [71] - 2:2, 2:4, 2:7, 2:10, 2:15, 2:19, 2:23, 2:24, 3:20, 3:23, 4:8, 4:14, 4:22, 5:4, 5:10, 5:17, 6:3, 6:9, 6:11, 7:13, 8:6, 9:23, 9:25, 10:12, 10:18, 10:21, 11:22, 12:15,

12:18, 13:10, 13:21, 14:3, 14:13, 14:19, 14:21, 14:23, 15:2, 15:7, 15:11, 15:13, 15:16, 16:18, 16:23, 16:25, 17:2, 18:20, 21:10, 21:16, 21:23, 26:17, 26:19, 27:2, 28:21, 28:25, 29:8, 29:15, 33:6, 33:7, 33:17, 34:2, 34:3, 34:5, 34:11, 35:13, 36:2, 36:12, 36:17, 36:22, 36:24, 37:5, 38:16
**THEODORE** [1] - 2:11
**THEORETICAL** [1] - 8:2
**THEORETICALLY** [1] - 8:2
**THEORY** [1] - 34:24
**THEREAFTER** [1] - 32:5
**THEREFORE** [1] - 9:18
**THEY'VE** [1] - 28:4
**THINKING** [1] - 12:8
**THRASH** [1] - 6:19
**THREE** [5] - 3:9, 5:22, 21:5, 21:20, 21:25
**THREE-LEVEL** [1] - 3:9
**THREE-MINUTE** [1] - 21:25
**THRESHOLD** [1] - 10:15
**THROUGHOUT** [1] - 7:5
**THURSDAY** [1] - 18:11
**TIEBREAKER** [2] - 5:15, 6:13
**TO** [1] - 38:15
**TODAY** [10] - 2:3, 13:4, 17:16, 19:7, 22:7, 25:11, 30:12, 30:13, 33:9, 37:6
**TORNADO** [1] - 12:17
**TORNADOES** [2] - 30:13, 30:14
**TOTAL** [2] - 3:10, 20:1
**TOTEM** [1] - 24:3
**TOUCH** [1] - 20:21
**TOUGH** [1] - 28:25
**TOWARDS** [1] - 5:16
**TRAFFICKED** [1] - 8:18
**TRANSACTION** [1] - 23:17
**TRANSCRIPT** [3] - 22:4, 22:5, 38:7
**TREATING** [1] - 33:3
**TREATMENT** [4] - 13:15, 31:13, 32:19, 32:25
**TRIES** [1] - 22:10
**TRUE** [5] - 7:13, 10:12, 18:20, 36:16, 38:6
**TRUTH** [1] - 28:11
**TRY** [3] - 13:13, 14:8, 27:14
**TRYING** [2] - 14:7, 25:21
**TURNED** [1] - 23:23
**TWO** [14] - 3:3, 4:12, 4:16, 4:22, 4:24, 8:6, 9:3, 15:23, 23:16, 32:4, 36:3, 36:6, 36:7
**TYPICALLY** [1] - 14:20

## U

**U.S.C** [3] - 7:5, 9:6, 11:13
**UNABLE** [1] - 35:3
**UNDER** [5] - 3:6, 11:12, 24:14, 33:16, 34:18
**UNDERCOVER** [5] - 22:2, 23:7, 23:8, 23:20, 27:24
**UNENFORCEABLE** [1] - 34:24
**UNITED** [10] - 2:5, 2:12, 4:14, 4:15, 4:18, 4:20, 7:19, 9:2, 11:24, 32:12
**UNITED** [1] - 38:3
**UNLAWFUL** [2] - 32:2, 34:14
**UNLAWFULLY** [1] - 32:1
**UNOPPOSED** [1] - 20:18
**UNPUBLISHED** [4] - 4:8, 4:10, 5:17, 10:25
**UNQUOTE** [1] - 23:8
**UNREASONABLE** [1] - 5:3
**UP** [17] - 10:3, 10:4, 13:1, 13:9, 14:2, 17:19, 18:6, 18:16, 19:1, 20:4, 21:6, 21:20, 22:24, 23:8, 27:10, 31:8, 32:20
**UPSET** [1] - 23:25
**UPSTAIRS** [1] - 36:7
**UROLOGISTS** [1] - 20:8
**USSC** [1] - 3:6

## V

**VALID** [2] - 32:18, 32:24
**VARIANCE** [1] - 26:12
**VARIOUS** [1] - 7:6
**VEHICLE** [1] - 32:10
**VI** [6] - 3:11, 11:8, 11:17, 19:6, 29:17, 30:9
**VIDEO** [1] - 22:8
**VIEW** [1] - 27:12
**VIOLA** [1] - 38:14
**VIOLATED** [3] - 7:16, 7:24, 8:3
**VIOLATIONS** [1] - 7:16
**VIOLENCE** [1] - 5:23
**VISION** [1] - 6:1
**VOCATIONAL** [1] - 12:24

## W

**WAITING** [1] - 5:2
**WAIVE** [1] - 34:20
**WAIVED** [1] - 34:15
**WAIVER** [2] - 34:23, 35:11
**WAIVERS** [1] - 34:22
**WAIVES** [1] - 34:21
**WALK** [2] - 36:5, 36:18
**WANTS** [2] - 14:25, 22:12
**WAR** [1] - 29:5

**WARNING** [3] - 22:10, 22:13, 28:7
**WARNINGS** [1] - 12:17
**WARRANT** [1] - 32:13
**WEATHER** [1] - 30:14
**WEEK** [1] - 11:4
**WHEREAS** [1] - 36:14
**WHOLE** [3] - 29:23, 29:24, 30:22
**WIFE** [3] - 36:24, 37:3, 37:5
**WITHDRAW** [1] - 21:13
**WITNESSES** [1] - 12:3
**WORD** [5] - 9:25, 12:5, 14:13, 14:17, 26:19
**WORDS** [2] - 8:12, 8:14
**WORLD** [1] - 13:17
**WORRIED** [1] - 29:2
**WORRY** [1] - 29:1
**WORSE** [1] - 26:3
**WORTH** [1] - 22:16
**WRIGHT** [1] - 2:2
**WRITE** [2] - 21:15, 26:23
**WRONGED** [1] - 26:21

## Y

**YEAR** [3] - 18:3, 21:1, 21:2
**YEARS** [11] - 3:1, 3:7, 5:22, 11:14, 11:15, 11:24, 12:9, 12:25, 17:21, 19:1, 34:4
**YEARS'** [1] - 31:11
**YESTERDAY** [1] - 16:3
**YORK** [1] - 8:8
**YOU-ALL** [10] - 2:15, 35:21, 36:6, 36:10, 36:12, 36:25, 37:9, 37:11, 37:12

## Z

**ZBOROWSKI** [1] - 38:14
**ZBOROWSKI** [1] - 38:14

## §

**§** [2] - 3:6, 11:13