IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>LYEDREKUS BAILEY | Criminal Action No.<br><br>2:23-cr-00030-SCJ-AWH |

### Response in Opposition to Defendant's Motion to Vacate Sentence

The United States of America, by Theodore S. Hertzberg, United States Attorney, and Gabriel Mendel, Assistant United States Attorney for the Northern District of Georgia, files this response in opposition to Bailey's § 2255 Motion to Vacate Sentence. (Doc. 46). Bailey's motion is without merit. It should be denied without a hearing and no certificate of appealability should issue.

### 1. Statement of Facts

#### A. Offense Conduct

An undercover narcotics investigation conducted by various federal, state, and local law enforcement agencies led to a series of recorded controlled buys of fentanyl from Bailey in late 2020 and early 2021. (PSR ¶¶ 7-23). Surveillance of Bailey in March 2021 suggested he was obtaining additional drugs throughout the day, so officers conducted a traffic stop and found more than 100 grams of heroin hidden on the body of Bailey's companion. (PSR ¶¶ 22-23).

#### B. Guilty Plea

Though originally charged in a five-count indictment including a prior conviction notice, Bailey entered a negotiated plea to a single-count information

charging him with conspiring to traffic at least 40 grams of fentanyl and 100 grams of heroin. (Docs. 1, 2, 2-1, 23). The information did not contain a prior conviction notice. (Doc. 1). The government agreed to recommend a sentence not higher than 235 months, and Bailey agreed to request a sentence not lower than 188 months. (Doc. 2-1 ¶¶ 17-18).

The Court held a plea hearing on October 6, 2023. (Doc. 23). At the beginning of the hearing, government counsel were excused so that Bailey could speak with the district court about wanting a mental health evaluation. (*Id*. at 3-4). The Court reminded Bailey that, at a pretrial conference the prior month, Bailey said he wanted a trial and there was no request for a mental health evaluation. (*Id.* at 4). The Court was not inclined to delay the trial — scheduled for October 23 — but reminded Bailey he did not have to plead guilty. (*Id.* at 4-6). Bailey reiterated his desire to plead guilty — stating that "I never wanted to go to trial. I always pleaded guilty from the beginning. I always said I was guilty from the beginning." — and government counsel were brought back in. (*Id.* at 5-6).

Bailey was placed under oath and confirmed that, if he did not understand the Court's questions, he would say so. (*Id.* at 8-9). Bailey's counsel confirmed he read the plea agreement to Bailey, and Bailey said he had no questions about it. (*Id.* at 9). Bailey said he had taken no drugs, medicine, pills, or alcohol in the previous 24 hours. (*Id.*). The Court reviewed Bailey's constitutional trial rights, and Bailey said he understood his rights and wanted to waive them and plead guilty. *Id*. at 10-14. Government counsel then summarized the plea agreement, including the government's promise to dismiss the pending indictment, the parties' sentencing recommendations, and Bailey's waiver of appeal. (*Id.* at 14-

2

18). Bailey confirmed that he understood the plea agreement, had no other plea agreement, and no other promises had been made to him. (*Id.* at 18-19). Bailey's counsel affirmed that it was in Bailey's best interest to plead guilty and that no promises were made that he would receive a particular sentence or a particular amount of credit for time in custody. (*Id.* at 19-20).

Bailey's counsel confirmed that he had enough time to discuss the case with his client, but Bailey suggested he had not had enough time to think about and discuss the plea with his attorney. (*Id.* at 21). The Court responded that the case would then be set for trial on October 23, to which Bailey said, "I had enough time to talk to him." (*Id.*). The Court told Bailey, "I am not trying to force you to trial, Mr. Bailey. If you don't think you've had enough time to talk to your attorney, Mr. Hames, we will give you that time." (*Id.* at 22). Then the Court said, "So one more time. Have you had sufficient time to talk to [defense counsel] about your case before entering a plea of guilty here today?" (*Id.*). Bailey responded, "Yes, sir." (*Id.*). Asked if he was satisfied with the work of his defense counsel, Bailey responded, "Yes, sir." (*Id.*).

The Court again emphasized to Bailey that he did not need to go forward with a plea that morning:

> I want to go back and put on the record. Mr. Bailey, you understand, you can plead guilty at any point in time you like in a case. If you don't think you had enough time to talk to [defense counsel], you can always -- I will go forward. You told me you've had enough time, but I want the record to reflect at this point in time the Court is saying, Hey, we have a trial set for October 23. If you don't think you have enough time, then we won't go forward with the guilty plea here this morning.

3

(*Id.* at 23). The government explained that the offer to plead to an information would be withdrawn after that day, but Bailey would still be able to plead guilty to the existing indictment. (*Id.* at 23). The Court again reiterated to Bailey that "you don't have to go forward here this morning on this plea of guilty. If you say you didn't have enough time, you don't have to go forward. You can talk more to [defense counsel] about it and plead guilty at any point in time between now and October 23, even at the day of trial, as long as you understand what [government counsel] just said." (*Id.* at 24).

Government counsel and defense counsel then discussed with the Court the difference between pleading guilty to the information and going to trial or pleading guilty to the original indictment. (*Id.* at 24-26). Defense counsel expressed a mistaken understanding that the prior conviction notice in the original indictment meant Bailey would have faced a 25-year mandatory minimum, but government counsel explained that the prior conviction notice would have subjected Bailey only to a 10-year mandatory minimum and affected his career offender Guidelines range. (*Id.*).

After this clarification, the Court again asked Bailey if he "had sufficient time to think about and discuss this matter fully with your attorney … before entering a plea of guilty?" (*Id.* at 27). Bailey conferred with his attorney and confirmed that he wanted to go forward with the plea. (*Id.*). Asked whether he "had sufficient time to discuss this matter with [defense counsel] before entering your plea of guilty here this morning," Bailey responded, "Yes, sir." (*Id.*).

Bailey then expressed displeasure with his attorney and his desire to have a mental health evaluation before deciding whether to take a plea. (*Id.* at 28-32).

4

The Court excused government counsel, and defense counsel explained to the Court that if he had any indication that Bailey suffered from some mental health illness or defect that would preclude him from understanding the nature of the proceedings, he would have asked for a mental health evaluation. (*Id.* at 31). The Court found that Bailey's request for an evaluation was done "for purposes of delay" and told Bailey that, although it would not provide yet another court-appointed attorney,[1] Bailey had the right to hire his own attorney or represent himself. (*Id*). The Court asked Bailey, "do you want to proceed with this plea?" (*Id.* at 31-32). Bailey responded, "Yes, sir." (*Id.*).

Government counsel explained the elements of the charge to which Bailey was pleading guilty and the maximum sentence for his conduct. (*Id.* at 32-33). Bailey confirmed he discussed the charge with his attorney and understood what he was charged with doing. (*Id.* at 33). Government counsel then set forth the statutory penalties, including a mandatory minimum of five years in prison and a maximum of 40 years. (*Id.* at 33-34). Asked whether he understood "the maximum and minimum penalties that may be imposed as a result of you entering a plea of guilty to this information this morning," Bailey responded, "Yes, sir." (*Id.* at 34). Bailey confirmed his understanding that his Guidelines

---

[1] The Court had already replaced Bailey's appointed counsel once. (Doc. 23 at 3). Trial was originally scheduled for June 2023, but six weeks prior, Bailey's then-counsel moved to withdraw because Bailey "believes counsel . . . is not acting in his best interest" and "has lost confidence in counsel's ability to defend him." *See United States v. Bailey*, Case No. 2:22-CR-048-SCJ-JCF, Doc. 34 (N.D.Ga. April 27, 2023). After new counsel was appointed, trial was rescheduled for October 2023. *See United States v. Bailey*, Case No. 2:22-CR-048-SCJ-JCF, Doc. 43 (N.D.Ga. June 15, 2023).

could not yet be calculated and that the Court could impose a sentence more or less severe than the Guidelines range. (*Id.* at 34-35). The Court also explained Bailey's waiver of appeal and collateral attack, and Bailey confirmed his understanding. (*Id.* at 35-36). Government counsel presented the factual basis for Bailey's charge, and Bailey agreed with the summary. (*Id.* at 37-39).

Asked whether he was guilty of the charge in the information, Bailey responded, "Yes, I'm guilty, Your Honor." (*Id.* at 39). Bailey said there was not any question asked or anything said that he wished for the Court to repeat or clarify. (*Id.*).

The Court found that it had "observed the defendant during this proceeding," that "[h]e does not appear to be under the influence of any substance that might affect his judgment or actions in any manner," and that he "understands the charge and the consequences of his plea of guilty." (*Id.*). The Court also found Bailey's plea to be "free of any coercion or influence of any kind" and to be "voluntarily made with full knowledge of the charge against him and the consequences of his plea." (*Id.* at 39-40). The Court found that Bailey "is competent to understand these proceedings and to enter a knowingly plea of guilty" and that "there's been no promises of any kind made to him by anyone, except as incorporated in the plea agreement as set out in open court." (*Id.* at 40).

## C. Sentencing

Prior to sentencing, Bailey's counsel filed a sentencing memorandum arguing that Bailey did not qualify as a career offender, addressing the § 3553(a) factors, and including more than a dozen letters of support. (Doc. 7).

6

At sentencing, Bailey's counsel renewed his argument that Bailey did not qualify as a career offender because his state drug offenses were not a categorical match for the federal versions of the crime. (Doc. 24 at 4-6). The Court overruled Bailey's objection, determined he was a career offender, and calculated his Guidelines range at 188 to 235 months. (*Id.* at 10-11, 29).

The parties addressed the § 3553(a) factors and the Court sentenced Bailey to 235 months in custody. (*Id.* at 12-31). The Court told Bailey that "[y]our attorney, Mr. Hames, has done a great job. He's made me think about things, look at things I haven't considered in the memorandum." (*Id.* at 30-31). The Court stated that, even if it had sustained Bailey's objection to the career offender designation, the sentence still would have been 235 months "regardless of the guideline." (*Id.* at 33-34).

### D. Post-Conviction

Bailey filed a direct appeal, arguing that his plea was not knowing and voluntary because:

> (1) he was not fully informed of the consequences of his plea agreement, as evinced by his counsel's misstatement of the mandatory minimum of the charges in the indictment; (2) the court failed to take extra precautions in light of his mental health concerns and limited education; and (3) had he been fully informed of the consequences of his plea, he would have declined to enter a guilty plea under the plea agreement.

(Doc. 44 at 2). The Eleventh Circuit affirmed his conviction. (*Id.* at 11). The court found that Bailey's plea hearing "sufficiently addressed each of Rule 11's three core principles" because the Court, after placing Bailey under oath, "(1) ensured his guilty plea was free from coercion; (2) confirmed that Bailey

understood the nature of the charge against him and reviewed the information with his attorney; and (3) confirmed that Bailey understood the consequences of his guilty plea." (*Id.* at 8).

As to Bailey's claims regarding mental health, the court found that Bailey failed to show any error:

> [A]s to the mental health concerns detailed in the PSI and his request for a mental health evaluation, he fails to explain how his undiagnosed "depression and possibly anxiety" affected his ability to comprehend the plea proceedings. Moreover, at his plea hearing, his counsel denied observing "any inclination that . . . [he] suffered from some mental health illness or defect that would have precluded him from understanding the nature of the[ ] proceedings." While his counsel noted potential mental health concerns at the sentencing hearing, he clarified that he "ha[d] not seen any instance that would cause [him] to be concerned about [Bailey's] ability to understand the proceedings." Furthermore, at his plea hearing, Bailey's counsel noted that his desire for a mental health evaluation was "a relatively new development," and the court confirmed that Bailey "said nothing about any kind of evaluation" at his pretrial conference in the month prior. Thus, the court found that "the request for an evaluation [was] for purposes of delay."

(*Id.* at 7). And the court rejected Bailey's claim that the plea was not knowing and voluntary, "especially in light of his sworn statements confirming he understood the proceedings, denying the need for more time to discuss the case with his attorney, and rejecting the court's offer to repeat or clarify matters at the end of the hearing." (*Id.* at 8).

Bailey has now filed a § 2255 motion challenging his conviction and sentence. (Doc. 46). Therein, Bailey raises two categories of claims alleging ineffective assistance of counsel, focused first on his plea and then on his sentencing. (*Id.*).

8

The Court ordered the government to respond. (Doc. 47).

## 2.  Argument and Citations to Authority

### i.   Legal standard

To prevail on a claim of ineffective assistance of counsel, a defendant has the burden to prove by a preponderance of the evidence both incompetence and prejudice, *i.e.*, that "(1) . . . counsel's representation fell below an objective standard of reasonableness, and (2) . . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Chandler v. United States*, 218 F.3d 1305, 1312-13 (11th Cir. 2000) (*en banc*) (internal quotation marks omitted); *see also Strickland v. Washington*, 466 U.S. 668 , 687(1984). But "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697; *see also Chandler*, 218 F.3d at 1312.

"Counsel's competence . . . is presumed and the [petitioner] must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms." *Chandler*, 218 F.3d at 1314, n.15 (alterations and emphasis in original) (noting that the "presumption of competence must be disproved by a petitioner"). "Never does the government acquire the burden to show competence, even when some evidence to the contrary might be offered by the petitioner." *Id.*

The standard for evaluating counsel's performance is "reasonableness under prevailing professional norms." *Chandler*, 218 F.3d at 1313 (internal quotation marks omitted). To prove ineffectiveness, a defendant must show that his

attorney's representation fell "outside the wide range of professionally competent assistance." *Id.* at 1314 (internal quotation marks omitted). The same standards of effectiveness apply at the guilt and sentencing stages of representation. *See Mills v. Singletary*, 63 F.3d 999, 1020 (11th Cir. 1995) ("This standard of effectiveness applies equally to both the guilt and the sentencing phases of the trial.").

When evaluating an attorney's performance, the Court must be highly deferential, and "must avoid second-guessing counsel's performance." *Chandler*, 218 F.3d at 1314. Instead, the Court must "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Id.* (internal quotation marks omitted) (alteration in original). Thus, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168 (1986)). "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315. Furthermore, when reviewing counsel's performance, the Court "must evaluate the reasonableness of counsel's performance from counsel's perspective at the time," not with the distortion of hindsight. *Id.* at 1316 (internal quotation marks omitted). "The reasonableness of a counsel's performance is an objective inquiry." *Id.* at 1315. Counsel cannot be ineffective for failing to raise meritless arguments. *See Bolender*

10

*v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

To show prejudice, a defendant must show more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. "Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* (internal citation omitted). Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Prejudice is established only by showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Gilreath v. Head,* 234 F.3d 547, 551 (11th Cir. 2000) (the defendant has the burden of affirmatively proving prejudice).

### ii.   Bailey's claims are without merit.

#### a.  Ground One – Plea

Bailey argues first that his plea was not knowing and voluntary because his counsel was ineffective in three ways: (1) failing to communicate and inform him of the circumstances and consequences of pleading guilty; (2) failing to conduct an adequate pretrial investigation; and (3) failing to negotiate a more favorable plea agreement. (Doc. 46-1 at 12). Bailey fails to show deficiency or prejudice on any ground.

11

Bailey's claim that his counsel failed to communicate with him regarding the circumstances and consequences of pleading guilty is so vague and generalized that it fails to state a valid basis for relief. *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (stating that "[c]onclusory allegations of ineffective assistance are insufficient."). Just as he did on direct appeal, Bailey fails to identify anything specific that he misunderstood or was misled about, or any specific information his attorney failed to provide that would have been material to his decision to plead guilty.

Bailey's claim is also amply rebutted by his plea colloquy. In its opinion affirming his conviction, the Eleventh Circuit detailed the Court's lengthy Rule 11 colloquy which ensured that Bailey's plea was knowing and voluntary because it "(1) ensured his guilty plea was free from coercion; (2) confirmed that Bailey understood the nature of the charge against him and reviewed the information with his attorney; and (3) confirmed that Bailey understood the consequences of his guilty plea." (Doc. 44 at 8).

And Bailey's present claims directly contradict his "sworn statements confirming he understood the proceedings, denying the need for more time to discuss the case with his attorney, and rejecting the court's offer to repeat or clarify matters at the end of the hearing." (*Id.*). Such "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *accord United States v. Gonzalez–Mercado*, 808 F.2d 796, 800 n. 8 (11th Cir.1987) ("While Rule 11 is not insurmountable, there is a strong presumption that the statements made during the colloquy are true."). Indeed, because Bailey made statements under oath at a plea colloquy, "he bears a heavy burden to

12

show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) (per curiam). He fails to do so, and thus fails to show that his attorney was deficient or that Bailey did not understand the consequences of his plea.

Nor can Bailey show prejudice, which would require him to demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Bailey does not even allege, let alone show, such a probability. Nor could he. As the Eleventh Circuit held in affirming his conviction, Bailey failed to show that "had he been properly informed of the consequences of his plea, he would have declined to enter a guilty plea under the plea agreement." (Doc. 44 at 11). As the court explained, "this assertion is refuted by the record" because "during his plea hearing, Bailey asserted that he: (1) 'never wanted to turn down a plea deal and go to trial'; (2) 'always ple[d] guilty from the beginning'; and (3) 'wanted to plead guilty' at the hearing." (*Id.*). Just as he did on appeal, Bailey fails to carry his burden of showing any possibility — let alone a "reasonable probability" — that he would have gone to trial but for his attorney's alleged deficiencies.

Bailey next complains about alleged deficiencies in his attorney's pretrial investigation, though the only specific complaint he makes is that his attorney failed to investigate his mental health. (Doc. 46-1 at 18). But nowhere in Bailey's motion does not identify what mental health issue his attorney was supposed to investigate or how this would have changed the outcome of his case. *See, e.g.*, *Hartley v. Sec'y, Fla. Dep't of Corr.*, No. 3:08-CV-962-MMH-LLL, 2022 WL 3099256, at *15 (M.D. Fla. Aug. 4, 2022) ("To the extent Hartley asserts his trial counsel and

13

postconviction counsel were ineffective when they failed to have an expert evaluate Hartley and to present mental health mitigation evidence, the Court finds that he cannot demonstrate prejudice because his claim is speculative. Importantly, Hartley does not even allege that he suffers from any mental illness."). And Bailey's "speculation otherwise cannot form the basis of an ineffective assistance of counsel claim." *Id.*; *see also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim); *Cordero v. United States*, No. 4:05-CR-057-02-HLM, 2012 WL 13027043, at *6 (N.D. Ga. May 15, 2012) ("Petitioner also contends that his trial counsel failed to investigate Petitioner's case thoroughly and to prepare for trial adequately. Petitioner, however, does not indicate what evidence counsel would have discovered if counsel had conducted the investigation that Petitioner wanted, and he certainly has not shown how this evidence would have changed the result of his case. Under those circumstances, Petitioner has failed to demonstrate that his counsel's performance was deficient or that any alleged deficiency prejudiced Petitioner.").

The record also shows that Bailey's counsel was aware of his claimed mental health issues, discussed the issue with the Court and affirmed that:

> if [defense counsel] had any inclination that Mr. Bailey suffered from some mental health illness or defect that would have precluded him from understanding the nature of these proceedings or what he was looking for, you know, what he had to weigh in his mind and that kind of thing, [defense counsel] certainly would have petitioned the Court for a mental health evaluation.

14

(Doc. 23 at 30). Moreover, the Court spoke to Bailey about his request for a mental health evaluation and reminded Bailey that, at a pretrial conference the prior month, Bailey said he wanted a trial and there was no request for a mental health evaluation. (*Id.* at 4). Instead, the Court found that Bailey's request for an evaluation was done "for purposes of delay." (*Id.* at 31).

Because the record demonstrates that trial counsel considered Bailey's mental health and because "[s]peculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation," the claim is both refuted by the record and meritless. *Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002); *see also Murray v. United States*, No. 5:17-CV-232-OC-22PRL, 2018 WL 8838769, at *8 (M.D. Fla. Aug. 24, 2018) ("Murray merely speculates that findings from a mental health professional would have been favorable or helpful to his case and would have either led him to reject the guilty plea or resulted in a lesser sentence.").

Finally, Bailey claims that his attorney failed to attempt to negotiate a favorable plea agreement. (Doc. 46-1 at 20-23). This claim, like the others, is so vague and speculative as to fail to state a claim. It is also belied by the record, which shows that Bailey's counsel negotiated a favorable plea agreement under which Bailey pleaded to a single-count information without a prior conviction notice, rather than a five-count indictment including a prior conviction notice, resulting both in a lower mandatory minimum sentence and a lower Guidelines range under the career offender table. (Doc. 23 at 24-26).

To the extent Bailey is suggesting that an even more favorable plea agreement was possible, the claim is entirely speculative. Plea agreements are a matter of

15

prosecutorial discretion and the government is not required to accept any plea deal offered by a defendant. *See United States v. Palmer*, 809 F.2d 1504, 1508 (11th Cir. 1987). A petitioner thus fails to establish that he was prejudiced by counsel's failure to negotiate a more favorable plea agreement with nothing more than the bald assertion that such an agreement might have been possible. *See McNair v. United States*, No. CV 118-068, 2019 WL 1497058, at *13 (S.D. Ga. Feb. 13, 2019), *adopted by, McNair v. United States*, No. CV 118-068, 2019 WL 1497034 (S.D. Ga. Apr. 4, 2019) (finding petitioner did not allege any facts associated with the plea negotiation process or why he would have received a more favorable deal but for counsel's alleged ineffective assistance); *Guyadeen v. United States*, 3:04-cv-1143-J-32MCR, 2006 WL 1360894, at *2–3 (M.D.Fla. May 17, 2006) (finding no prejudice because, "even assuming [petitioner's] counsel should have proffered that substitute conditions be included in the plea agreement, there is no evidence that the government would have acquiesced. Thus, [petitioner] has neither shown his counsel's performance to be inadequate nor any resulting prejudice."); *Freeman v. United States*, 1:06–CR–0185–TWT–JFK, 2011 WL 2680494, at *5 (N.D.Ga. June 10, 2011), *adopted sub nom by United States v. Warner–Freeman*, 2011 WL 2680509 (N.D. Ga. May 7, 2011) ("All [m]ovant shows is that [he] would have preferred a more favorable plea agreement-such a showing could be made by almost anyone who has entered into a guilty plea."). Thus, Bailey "fails to show that he was prejudiced here because his assertion that counsel could have obtained a more favorable plea agreement is wholly speculative." *Cummings v. United States*, No. CR 110-107, 2013 WL 2422889, at *8 (S.D. Ga. June 3, 2013).

Bailey shows neither deficient performance nor prejudice in this claim, and no evidentiary hearing is required.

### b. Ground Two – Sentencing

Bailey next complains about his counsel's performance at sentencing, claiming that his attorney failed to discuss and explain the PSR to him, file substantive objections to the PSR, or argue mitigations or object that his sentence was substantively unreasonable. (Doc. 46-1 at 23). Each claim fails.

Though Bailey states in a heading that his attorney failed to discuss and explain the PSR to him, he fails to allege any evidence in support of this claim, or set forth any way in which he was prejudiced by the alleged failure. And the record belies the claim, because the Court asked Bailey at his sentencing hearing "have you reviewed the presentence report in this case with your attorney" and Bailey said, "Yes, sir." (Doc. 24 at 2). Since the record rebuts his claim, which is otherwise undeveloped and inadequate, Bailey fails to show any deficiency. He also fails to meet his burden of showing "that but for his counsel's deficiency, there is a reasonable probability he would have received a different sentence." *Porter v. McCollum*, 558 U.S. 30, 41 (2009).

Bailey's claim that his attorney failed to file substantive objections is also false, since his attorney filed a sentencing memorandum objecting to Bailey's career offender designation on grounds that Bailey's prior state drug offenses were not categorical matches for their federal equivalents, an argument he also made at sentencing. (Doc. 7; Doc. 24 at 4-6). Though the Court rejected the argument, it was a reasonable ground on which Bailey's counsel could object, as several courts of appeal have adopted this position. *See United States v. Minor*, 121 F.4th

17

1085, 1089 (5th Cir. 2024); *United States v. Bautista*, 989 F.3d 698, 702 (9th Cir. 2021); *United States v. Townsend*, 897 F.3d 66, 72 (2d Cir. 2018).[2]

Bailey devotes the bulk of his motion to an argument that his career offender designation was incorrect for a different reason — that his conspiracy offense did not qualify as a "controlled substance offense." (Doc. 46-1 at 23-31). But to the extent Bailey is challenging the merits of his Guidelines calculation, such a claim is not cognizable under § 2255. *See United States v. Thomason*, 940 F.3d 1166, 1173 (11th Cir. 2019) (noting that a defendant "cannot challenge the Guidelines calculation now because even if he had preserved this claim, it is not cognizable in a motion to vacate").

To the extent Bailey is arguing that his counsel was ineffective because he did not raise the objection, Bailey can show neither deficiency nor prejudice under *Strickland*. As to deficiency, Bailey fails to recognize that he was sentenced in January 2024, several months after Amendment 822 to the Sentencing Guidelines became effective. U.S. Sent'g Comm'n, *Adopted Amendments* (effective November 1, 2023), Amend. 822. Amendment 822 provides that the definition of "controlled substance offense" includes inchoate crimes for purposes of the career offender enhancement. U.S.S.G. § 4B1.2(d); *United States v. Willis*, No. 12-cr-80118, 2024 WL 4502299, at *10 (S.D. Fla. Oct. 16, 2024). It was also well within the reasonable strategic choices for Bailey's counsel to challenge the career offender designation based on the categorical overbreadth of his predicate state drug offenses, an

---

[2] The Eleventh Circuit did not reject the argument until several months after Bailey's sentencing. *See United States v. Dubois*, 94 F.4th 1284 (11th Cir. 2024), *cert. granted, judgment vacated sub nom.* Dubois v. United States., 145 S. Ct. 1041, 220 L. Ed. 2d 375 (2025), *and reinstated by* 139 F.4th 887 (11th Cir. 2025)

18

argument that, as described above, has prevailed in several other circuits even if it was subsequently rejected by the Eleventh Circuit.

Nor can Bailey show prejudice, because the Court explicitly stated as the sentencing that, even if it had sustained Bailey's objection to the career offender designation, the sentence still would have been 235 months "regardless of the guideline." (Doc. 24 at 33-34). So even if Bailey's counsel had raised the argument that Bailey now advances, and succeeded in challenging Bailey's career offender designation, Bailey cannot show "a reasonable probability he would have received a different sentence." *Porter*, 558 U.S. at 41. To the contrary, the record establishes that he would have received the same sentence.

Finally, Bailey asserts conclusory claims that his attorney failed to present mitigating evidence, again focused on the speculative results of a "psychological assessment. (Doc. 46-1 at 32).[3] But the record shows that Bailey's counsel presented more than a dozen letters of support on Bailey's behalf and presented mitigation arguments both in the sentencing memorandum and at sentencing — so much so that the government accused Bailey's counsel of paying only "lip service" to Bailey's promises in the plea agreement. (Doc. 7; Doc. 24 at 16). Bailey shows no deficiency and leaves the Court with nothing but speculation "that but

---

[3] To the extent Bailey contends his attorney failed to object to the substantive reasonableness of his claim, he is mistaken. Bailey's counsel preserved this objection by advocating for a lower sentence than the one imposed. *See Holguin-Hernandez v. United States*, 589 U.S. 169, 174–75 (2020) ("A defendant who, by advocating for a particular sentence, communicates to the trial judge his view that a longer sentence is 'greater than necessary' has thereby informed the court of the legal error at issue in an appellate challenge to the substantive reasonableness of the sentence.")

for his counsel's deficiency, there is a reasonable probability he would have received a different sentence." *Porter*, 558 U.S. at 41.

Bailey thus shows neither deficient performance nor prejudice in this claim, and no evidentiary hearing is required.

### iii.    No evidentiary hearing is required and no COA should issue.

The Court need not hold an evidentiary hearing every time a § 2255 claim is raised. *Futch v. Dugger*, 874 F. 2d 1483, 1485 (11th Cir. 1989). A federal habeas corpus petitioner is entitled to an evidentiary hearing only where the petitioner alleges facts that, if proven, would entitle him to relief. *Id.* "Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record." *Holmes v. United States*, 876 F. 2d 1545, 1553 (11th Cir. 1989). An evidentiary hearing is not required in this case because there are no issues that require the introduction of facts from outside the record. The files and records of the Court are sufficient to dispose of Bailey's motion.

Under 28 U.S.C. § 2253, the Court may only issue a Certificate of Appealability ("COA") if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In addition, the COA must indicate which specific issue or issues satisfy the required showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(3). In order to obtain a COA, a petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (2000).

Here, Bailey is not entitled to a COA because he has not made a substantial showing of the denial of a constitutional right.

## Conclusion

Bailey's motion should be denied without an evidentiary hearing, and the Court should decline to issue a Certificate of Appealability.

Respectfully submitted,

THEODORE S. HERTZBERG
*United States Attorney*

/s/GABRIEL A. MENDEL
*Assistant United States Attorney*
Georgia Bar No. 169098
gabriel.mendel@usdoj.gov

## Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record, and by mailing a copy with sufficient postage to:

Lyedrekus Bailey
35258-510
YAZOO CITY LOW II FCI
P.O. BOX 5000
YAZOO CITY, MS 39194

June 16, 2026

/s/ GABRIEL A MENDEL
GABRIEL A. MENDEL
*Assistant United States Attorney*